**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  07a0840n.06
Filed:  December 12, 2007

**No. 06-5037**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| v. | ) DISTRICT OF KENTUCKY |
| | ) |
| **CHRISTOPHER HOLLOWAY**, | ) OPINION |
| | ) |
| *Defendant-Appellant*. | ) |

**BEFORE: COLE and COOK, Circuit Judges; MILLS, District Judge.***

**RICHARD MILLS, District Judge.**  Christopher Holloway appeals his convictions for possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Finding no error, we affirm.

**I. BACKGROUND**

On January 14, 2005, Lexington, Kentucky Police Officer Joshua Masterson

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

stopped a black Chevrolet Blazer for disregarding a traffic light. (JA 74-77). Officer Masterson testified that as the driver, Christopher Holloway, then put both of his hands out the window, he observed a large amount of smoke escaping. As he approached the vehicle, Officer Masterson smelled the strong odor of marijuana, which Holloway admitted to having smoked. (JA 78). A female passenger who appeared to be intoxicated was also in the vehicle. (JA 79-80). The passenger, who was in possession of a glass pipe commonly used to smoke crack cocaine, was arrested for being under the influence. (JA 80).

Holloway was placed under arrest for operating a motor vehicle while under the influence. (JA 80-81). In addition to the crushed marijuana blunt on the floorboard, Officer Masterson found 1.2 grams of bagged marijuana in the Blazer, 5.4 grams of bagged crack cocaine in Holloway's left front pants pocket, 2.2 grams of bagged crack cocaine in Holloway's shirt pocket, rolling papers in Holloway's pants pocket, $94 in cash in Holloway's left pants pocket, and $300 in cash in his right rear pants pocket. (JA 81-82). While assisting Officer Masterson, Lexington Police Officer David Whittlesey found a loaded .380 caliber semi-automatic pistol under the driver's side floor mat (JA 114-16).

Officer Masterson found three cell phones in the Blazer. When the officer answered one of several calls to one phone, a male voice stated, "Chris, I need a $50

2

rock on American Avenue." (JA 83-85). Holloway subscribed to the telephone number for that cell phone. (JA 210-11). Christine Kirkland subscribed to the number assigned to the incoming call. (JA 211-12). Between 12:00 a.m. and 2:05 a.m. that night, five calls were made from Kirkland's telephone number to Holloway's cell phone. (JA 212). In January 2005, Jeff Kirkland lived with his grandmother, Christine Kirkland, in Lexington. (JA 120). On the night of the traffic stop, Kirkland contacted Holloway in an attempt to purchase $50 worth of crack cocaine. (JA 124-26). Kirkland used his grandmother's telephone to call Holloway. (JA 123-24). Officer Masterson testified that when Holloway was stopped, he was within five miles or less of the address where Kirkland was located. (JA 100-01).

At Holloway's trial, the district court ruled that Lexington Police Sergeant Pete Ford could testify as to whether Holloway's conduct was consistent with distribution. (JA 171). Sergeant Ford testified that it was his opinion that the crack cocaine "was [possessed] for distribution." (JA 174-77). Holloway called Daniel Lee as an expert witness. Holloway notes that Lee testified an individual could consume the 7.6 grams of cocaine base that was found in Holloway's automobile. (JA 236).

Holloway appealed his convictions. He alleges (1) the district court erred in admitting certain testimony of an expert witness; (2) the district court committed several errors which served to deny him his right to a fair trial; and (3) there was not

3

sufficient evidence to convict him of the felon in possession charge.

## II. ANALYSIS

### A. Standard of review

The district court's decision to admit or exclude certain evidence is reviewed for abuse of discretion. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). An alleged error that is not objected to at trial is reviewed for plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). Plain error must be "plain" and must "affect substantial rights;" this "usually means that the error must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 631-32, 122 S. Ct. 1781, 1785-86 (2002) (quotations and citation omitted). Because Holloway did not move for a directed verdict on Count 3, we review his sufficiency of the evidence claim solely to determine whether there was a "manifest miscarriage of justice." *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998).

### B. Sergeant Ford's expert testimony

Holloway claims that in allowing Sergeant Ford's testimony that the crack cocaine was possessed for distribution, the district court improperly allowed an expert to present evidence of Holloway's mental state. Sergeant Ford testified over Holloway's objection that based on his training and experience, it was his opinion that the crack cocaine was possessed for distribution. Holloway contends that this

4

testimony about his mental state violated Rule 704(b), which states:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

*Fed. R. Evid. 704(b)*. Holloway asserts that Sergeant Ford's testimony served to establish the requisite element of intent to distribute which is required for a conviction under 21 U.S.C. § 841(a)(1). Holloway argues that this testimony pertaining to his mental state is therefore prohibited by Rule 704(b).

"Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (citations omitted). The admissibility of such testimony typically depends on whether it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. (quoting Fed. R. Evid. 702). The court went on to note that "[p]olice officers are routinely allowed to testify that circumstances are consistent with distribution of drugs rather than personal use." *Id*. (citations omitted). In determining the admissibility of a law enforcement official's expert testimony under Rule 704(b), a court should examine "whether the expert actually referred to the

intent of the defendant or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent." *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). This court in *Combs* observed that because the officer testified "regarding conduct that would be consistent with an intent to distribute and left to the jury the final conclusion regarding whether Combs actually possessed the requisite intent," the district court committed no error in allowing the testimony. *Id*.

We conclude that the district court did not abuse its discretion in admitting Sergeant Ford's testimony that it was his opinion Holloway possessed crack cocaine with the intent to distribute. Sergeant Ford described the common practices of those who use crack cocaine and those who have the requisite intent to distribute before opining that Holloway possessed the crack cocaine for distribution. As in *Combs*, the jury was simply informed that Holloway's conduct was consistent with an intent to distribute. Accordingly, the admission of the testimony did not violate Rule 704(b). Moreover, jurors were instructed that they did not have to accept Sergeant Ford's opinion, and that it was their duty alone to decide how much weight to give his testimony. Finally, Jeff Kirkland corroborated Officer Masterson's testimony when he testified that he had attempted to purchase $50 worth of crack cocaine from Holloway on the morning of Holloway's arrest.

**C. Right to fair trial**

Holloway claims that a series of errors during his trial had the cumulative effect of denying him a fair trial. He alleges the following: (1) the district judge improperly questioned and negatively commented about the credibility of a defense witness; (2) the prosecutor argued outside the scope of evidence presented at trial; and (3) the district court erroneously instructed the jury on the elements of Count 3.

Holloway called as a witness Daniel Lee, a substance abuse counselor, who testified that an individual could consume the 7.6 grams of cocaine base that was found in Holloway's automobile. After direct and cross examination, the following exchange occurred between Lee and the court:

> The Court: If I was using crack cocaine, would I continue to use it until it was all gone or would I be able to save it?
> The Witness: Again, that depends on the individual –
> The Court: Say I was - - say I was using 5 grams a day.
> The Witness: Yes sir.
> The Court: Could I back off? Could I - -
> The Witness: It's possible, but would you? Probably not. Is it possible? Yes, but would you, probably not. But it is possible. There are some clients who have done that. Now, is it likely? No. Is it possible? Yes.
> The Court: Well, it's possible that I once played basketball for the University of Kentucky.

A judge "may analyze the evidence, comment upon it, and express his [or her] views with regard to the trial testimony of the witnesses." *United States v. Glover*, 21 F.3d

7

133, 137 (6th Cir. 1994) (citations omitted). Holloway contends that the judge's comments served to express his opinion about the credibility of a witness and the Defense's theory of the case. According to Holloway, the judge impermissibly became an advocate for the Government and this affected the outcome of the trial.

Holloway next asserts that during the closing argument, the prosecutor argued outside the scope of evidence that was presented at trial. Specifically, the prosecutor argued that Mr. Kirkland was one customer and that Holloway had already been out that night. Holloway contends that the Government presented no evidence that he had been out the night of his arrest. Moreover, there was no evidence that Kirkland was ever a customer, or that he had ever purchased any controlled substance from Holloway on a prior occasion.

Prosecutors have some latitude to argue reasonable inferences from the evidence. *See United States v. Emuegbunam*, 268 F.3d 377, 405-06 (6th Cir. 2001). Courts first consider whether the prosecutor's remarks were improper, and then determine whether the impropriety constitutes reversible error. In determining whether reversal is warranted, courts consider the following factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v.*

8

*DeJohn*, 368 F.3d 533, 547-48 (6th Cir. 2004) (citation omitted).

The Government contends the comments that Kirkland was a customer of Holloway's and Holloway had already been out that night were reasonable inferences from the evidence. There was testimony from his employer that Holloway made up to $300 per week and had not been paid the week prior to his arrest, testimony from Kirkland that he had requested $50 worth of crack cocaine that night, and testimony from a narcotics expert that the denominations of the $394[1] found on Holloway were consistent with street level drug dealing and that the street value of the crack cocaine found on him was approximately $760. (JA 195-96, 124-26, 175-76)

Holloway further contends that the district court erroneously instructed the jury on Count 3 of the Indictment. The district court instructed the jury on Count 3 as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:
> First, that the defendant had been convicted of a crime punishable by imprisonment for more than one year;
> Second, that the defendant, following his conviction, knowingly possessed the firearm specified in the Indictment;
> And third, that the specified firearm crossed a state line prior to the

---

[1]Of the $394, $300 was found in Holloway's right rear pants pocket. This included six twenty dollar bills, eleven ten dollar bills and fourteen five dollar bills. The $94 found in Holloway's left front pants pocket included two twenty dollar bills, one ten, three fives and twenty-nine ones. (JA 81-82).

alleged possession.

(JA 268). Holloway did not object to this jury instruction. Moreover, he acknowledges that it accurately reflected the Sixth Circuit's Pattern Jury Instructions. *See Sixth Circuit Pattern Instruction 12.01.* However, he contests the instruction on the third element of 18 U.S.C. § 922(g)(1). Holloway asserts that although the court's instruction required the jury to find that the firearm crossed a state line, Sixth Circuit case law requires that the firearm "travel[] in or affect[] interstate commerce." *See United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007). Accordingly, Holloway argues the instruction was an erroneous diversion from the section 922(g)(1) elements, as established by this court.

We conclude Holloway is unable to establish that the district court plainly erred, either when these alleged errors are considered individually or cumulatively. Regarding the district judge's comments, witness Daniel Lee had suggested that Holloway possessed the crack cocaine for personal use. Lee was asked whether an individual who was using crack cocaine would "use it until it was all gone or would I be able to save it?" (JA 241). Mr. Lee stated that it was possible, but unlikely, that an individual using five grams per day could "back off." The judge's comment that "it's possible that I once played basketball for the University of Kentucky" simply emphasized the witness's own statement that it was unlikely a user could "back off."

10

Although we find no error, any error would have been cured by the court's instruction that its comments and questions are not evidence (JA 257) and "[n]othing I've said or done during this trial is meant to influence your decision in any way."  (JA 275).

Holloway objects to certain statements in the Government's closing argument as being beyond the scope of evidence.  However, the prosecutor's statement that "Mr. Kirkland was one customer" is supported by Kirkland's own testimony. Holloway also takes issue with the prosecutor's statement that he had already been out that night.  This was a permissible inference to make based on the testimony from Holloway's employer and from Pete Ford.  Specifically, the statement was a reasonable inference based on Jeffrey Shelton's testimony that Holloway made no more than $300 per week and had not yet been paid that week, and Ford's testimony that the denominations of the $394 were consistent with street level drug trafficking and that the street value of the crack cocaine found on Holloway was approximately $760.  Accordingly, we are unable to find that the comments were improper.

Because the district court's felon-in-possession instruction properly reflected the law of the Sixth Circuit, Holloway is unable to show that the district court committed error, let alone plain error.  We conclude that the alleged errors did not have the cumulative effect of denying Holloway his right to a fair trial.  Even if errors were committed, no error "affected the outcome of the district court proceedings."

11

**D. Sufficiency of evidence in support of firearm conviction**

Holloway's next argument is related to his contention about the jury instruction. He claims the Government produced insufficient evidence to sustain his firearm conviction. To prove a violation of 18 U.S.C. § 922(g)(1), the Government must show that "(1) the defendant had a previous felony conviction; (2) the defendant possessed a firearm; and (3) the firearm traveled in or affected interstate commerce." *Gardner*, 488 F.3d at 713. "The government is required to prove only a minimal nexus between the firearm and interstate commerce." *United States v. Smith*, 320 F.3d 647, 655 (6th Cir. 2003) (citation omitted). Holloway alleges that although Special Agent Jesse Ray Hooker of the Bureau of Alcohol, Tobacco and Firearms testified that the .380 Walther firearm found in Holloway's car was produced for the Interarms Company in Alexandria, Virginia, he did not testify regarding the firearm's place of manufacture. Moreover, the agent did not say that the firearm crossed state lines after its production.

The fact that the firearm was manufactured in Virginia and found in Holloway's possession in Kentucky establishes that it traveled in commerce. *United States v. Fish*, 928 F.2d 185, 186 (6th Cir. 1991) ("[F]irearms possessed in a state other than the state of manufacture constitute firearms in or affecting commerce."). The evidence was sufficient to support a conviction on Count 3 of the Indictment.

12

We affirm the judgment of the district court.