NOT FOR FULL-TEXT PUBLICATION
File Name: 09a0408n.06

**FILED**

**Jun 09, 2009**

LEONARD GREEN, Clerk

**No. 07-6148**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

DANIEL ALFORD,

        Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

**BEFORE:  MARTIN, SUHRHEINRICH and WHITE, Circuit Judges.**

**SUHRHEINRICH, Circuit Judge.**  Defendant Daniel Alford appeals from the judgment of the district court following his conviction for possession with intent to distribute crack cocaine, and a resulting sentence of 400 months imprisonment.  We AFFIRM.

**I.  Background**

On July 19, 2005, Defendant was charged in a one-count indictment with possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

On February 3, 2006, shortly before trial, counsel filed a motion for a mental evaluation, which the court granted.  Defendant was sent to the Metropolitan Correctional Center in New York. The examining psychologist, Dr. William J. Ryan, concluded that Defendant did not have a rational and factual understanding of the proceedings against him and was incapable of assisting counsel in his defense.  Dr. Ryan diagnosed Defendant as suffering from Schizoaffective Disorder, Depressive

Type. Based on that report, on May 16, 2006, after an evidentiary hearing, the district court found that Defendant was not competent to stand trial and ordered Defendant returned to a psychiatric facility for further treatment and evaluation. Defendant was sent to the Federal Medical Center for Prisoners in Springfield, Missouri.

On July 3, 2006, trial counsel filed a notice of intent to assert an insanity defense. In response, the government filed a motion for a mental evaluation to determine if Defendant was insane at the time of the offenses charged in the indictment. On July 19, 2006, the magistrate judge granted the government's motion and ordered the staff at the Springfield, Missouri facility to perform a competency evaluation. Defendant was examined by Dr. Richart L. DeMier. Dr. DeMier disagreed with Dr. Ryan's diagnosis, concluding that Defendant did not have a mental illness that would preclude him from understanding the nature and potential consequences of the charges against him, and that he had the ability to assist properly in his defense should he choose to do so. On September 6, 2006, the magistrate judge found that, based on Dr. DeMier's psychological report, Defendant was competent and set the case for trial.

Trial began on April 2, 2007. The following facts are derived from the Government's trial witnesses. On the night of July 1, 2006, Officers Christopher Bell and Joseph Huckleby of the Knoxville Police Department were working extra security detail at Club Malibu 7 on Martin Luther King Boulevard in Knoxville, Tennessee. Officer Bell testified that he observed Defendant driving his car westbound on Martin Luther King Boulevard. Officer Bell had known Defendant for years and had interviewed him in connection with an unrelated investigation several days earlier. From that investigation, Bell knew that Defendant did not have a valid driver's license, so he contacted the records operator at the police department to determine the status of Defendant's license. Officer

2

Bell then positioned his patrol car so he could initiate a traffic stop and turned on his in-car video camera. When Defendant passed by again, Bell activated his blue lights and effected a traffic stop. Bell arrested Defendant for driving without a license and placed him in the back seat of the patrol car.

Officer Huckleby acted as backup. As Bell was taking Defendant into custody, Huckleby walked up to Defendant's vehicle and removed the keys from the ignition and placed them on the hood of the car. He observed two clear plastic bags, side by side, on the front seat. One bag contained an off-white, rock-like substance, and the other bag contained a white powdery substance. Huckleby directed Bell's attention to the drugs. Officer Bell testified that, like Huckleby, he believed the bags contained crack and cocaine powder.

The crack cocaine had been cut into twenty-one small rocks that Bell estimated had a street-value of approximately $40 per rock. Bell testified that Defendant did not have a pipe necessary to smoke the crack in his possession or vehicle. Bell searched Defendant incident to his arrest and found $230 in cash, in $20 denominations except for three $10 bills.

Bell advised Defendant of his *Miranda* rights after Defendant was placed in Bell's patrol car. Defendant told Bell that the powder cocaine was his, and that he had sold crack cocaine before, but denied that he had sold crack cocaine that day. Testing revealed that one bag contained 2.7 grams of cocaine hydrochloride, or powder cocaine, and the other bag contained 5.7 grams of cocaine base, or crack cocaine.

Agent Dave Lewis with the Drug Enforcement Administration (DEA) testified as an expert witness in narcotic drug trafficking practices. Lewis testified that a street-level crack dealer generally possesses numerous rocks of crack cocaine to sell to individual buyers, whereas a user will

3

typically obtain only one or two crack rocks at a time. Lewis explained that, because crack is such a highly addictive drug, a person who uses crack becomes instantly addicted, cannot function in society, cannot maintain employment, and will use all of his money to buy crack. Further, a crack addict generally has no money except the amount necessary to buy the next rock.

Lewis testified that crack possessed for personal use generally will be a "very small quantity" that can be consumed in one sitting. A user of crack will possess one or two crack rocks, as well as a pipe or glass tube, and will go to the nearest location to smoke it after purchasing it. Lewis testified that, based on his experience, persons who distribute crack possess sums in denominations of $20 bills since crack rocks are sold for $20 and $40 apiece.

On cross-examination, Defendant asked whether Lewis's opinion would be different if Lewis knew that Defendant had a "$300 to $500 a day habit" using crack cocaine. Lewis responded that if Defendant had such a drug addiction, he would not have had the cash he possessed and he would not have both powder and crack cocaine. Lewis also stated that, in his experience, crack users generally are not in possession of both sums of cash and drugs at the same time.

Defendant's only witness was his half-brother, Calvin Carson. Carson testified that he had used powder and crack cocaine for about twelve years and could use up to $500 worth of powder cocaine a day and up to $300 a day of crack cocaine. Carson testified that he could easily smoke 20 rocks of crack cocaine a day "because it just didn't last that long" and that he would buy in quantity. Carson testified that Defendant was smoking crack at the time Carson quit using it. Carson did not believe that Defendant had "ever quit using drugs." On cross-examination, Carson stated that when he was addicted, he never went anywhere without his crack pipe, but added that if he did not have it with him, he could always make a pipe using a bottle. Carson explained that as soon as he got a

4

crack rock, he would put it in his pipe and start smoking it. Carson testified that after he smoked the rock, he would use any money to purchase more rocks or steal to get more money, and agreed that money did not stay in his pocket very long.

The parties rested at the end of the day. The next morning the district court instructed the jury. The jury convicted Defendant of possession with intent to distribute five grams or more crack cocaine.

At sentencing, Defendant was deemed a career offender pursuant to U.S.S.G. § 4B1.1 based on a prior state felony drug conviction for attempted possession with intent to sell less than 1/2 gram of cocaine hydrochloride in state court, and a prior federal conviction for conspiracy to commit arson, resulting in a total offense level of 37. Defendant's prior convictions resulted in 17 criminal history points, which was reduced to 16 points as limited by the Guidelines. Because Defendant was on probation for misdemeanor assault and had also been released from federal custody on the arson conviction for less than two years, he received an addition of 3 criminal history points, for a total of 19 criminal history points. This put Defendant in a criminal history category VI, which was also the category applicable based on his career offender classification. With a total offense level of 37, the advisory Guidelines range was 360 months to life. The district court chose a sentence of 400 months.

This appeal follows.

## II. Analysis

### A. *Sua Sponte* Competency Hearing

On appeal, Defendant contends that based on the conflict between the two psychological reports dated less than four months apart, the district court *sua sponte* should have scheduled an

evidentiary hearing where he could subject the two Bureau of Prisons (BOP) psychologists' opinions to cross-examination and that the failure to do so violated the Due Process Clause.

A district court is required to order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense." 18 U.S.C. § 4241(a). "A criminal defendant is incompetent if he lacks 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or if he does not have 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Miller*, 531 F.3d 340, 348 (6th Cir.) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)), *cert. denied*, 129 S. Ct. 307 (2008).

Defendant's contention is disingenuous at best. The record reflects that the district court held a competency hearing after it received each BOP psychological evaluation and that Defendant intentionally chose not to cross-examine Dr. DeMier. At the second competency hearing, Attorney Bell (Defendant's counsel) told the magistrate judge that "he had spoken at length with the clinical psychologist who evaluated Defendant, that he had reviewed the Reports with Defendant, and that Defendant did not agree with said Reports." Rather than subpoena and cross-examine Dr. DeMier, Defendant requested funds to secure a third evaluation by a private psychologist. The magistrate granted this request. Defendant was then privately evaluated. The private psychologist agreed with Dr. DeMier and concluded that Defendant was competent. Defendant did not file this third report with the district court and did not request a third competency hearing. He also did not again raise the issue of his competency and notified the court that he was not pursuing an insanity defense.

6

This case is analogous to *United States v. Denkins*, 367 F.3d 537 (6th Cir. 2004). There, the defendant moved to withdraw his guilty plea based on his alleged lack of competency. *Denkins*, 367 F.3d at 542. The district court granted the defendant's request for a competency evaluation. After that evaluation deemed him competent, the defendant withdrew his blanket objection to the presentence report, which alleged that the defendant was not competent in any fashion to understand the proceedings. *Id.* at 543. This Court held that the defendant's decision not to raise the incompetency argument after the evaluation (presumably because it deemed him competent) "constituted an abandonment of the competency issue, plain and simple." *Id.* at 544. We therefore found that the defendant's objection on appeal was "forever foreclosed" and that it could not be "resurrected on this appeal." *Id.* (internal quotation marks and citation omitted).

Similarly here, having abandoned the opportunity for an evidentiary hearing after the receipt of the second BOP report, and having failed to request a third competency hearing, Defendant cannot now complain on appeal that the district court should have sua sponte provided that relief. *Accord United States v. Washington*, No. 03-6566, 2008 WL 822257, at *5 (6th Cir. Mar. 25, 2008) (holding that the defendant waived his argument that the district court should have ordered an additional competency evaluation where the defendant withdrew his request for further evaluation; citing *Denkins*).

Even if Defendant's claim was considered forfeited and not waived, there is no plain error. *See Denkins*, 367 F. 3d at 542-43 (noting that forfeiture, unlike waiver, does not extinguish "error" under Fed. R. Civ. P. 52(b)). Defendant does not contest the district court's finding that he was competent to stand trial, nor the district court's conclusion that the incompetency finding by Dr. Ryan was the result of Defendant's manipulation of the first evaluation. He also fails to identify any

actions which should have caused the district court to question his competency. In fact, Defendant's

actions demonstrate that he understood the proceedings against him. In a pro se letter to the district

court just prior to trial, Defendant requested a meeting with the court "to bring certain things to your

attention," including evidence that he did not possess the crack rocks that were seized from him with

the intent to resell them. At the beginning of trial, Defendant personally addressed the court and

asked for a change of venue because he felt that he was not being treated fairly. In short, this

argument is without support.

In any event, as noted, Defendant abandoned the incompetency issue.

### B. Sufficiency of the Evidence

Defendant argues that aside from Agent Lewis's expert testimony that the cocaine was

packaged for resale, the evidence was insufficient to sustain a finding of possession with intent to

distribute it beyond a reasonable doubt. Because Defendant failed to renew his motion for judgment

of acquittal at the conclusion of all the evidence, this issue is waived. Therefore we review only to

determine whether there was a "manifest miscarriage of justice," which exists only when the record

is "devoid of evidence pointing to guilt." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)

(internal quotation marks and citation omitted).

In order to sustain a conviction under 21 U.S.C. § 841(a), the Government must prove that

the defendant (1) knowingly (2) possessed a controlled substance (3) with intent to distribute it.

*United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006).

Initially, we note that Defendant implicitly concedes that the testimony of Agent Lewis, if

credited, supports the jury's finding that Defendant possessed the crack with intent to distribute it.

Lewis testified that, in his opinion, Defendant possessed the crack with intent to distribute it because

8

he had twenty-one $40 rocks, with a total value of $840, in his possession, as well as $230 mostly in $20 bill denominations and an eight ball of powder cocaine worth $250 to $300. The jury was free to accept his expert opinion, which was sufficient to meet the government's burden of proof.

Other evidence also supported the jury's finding of intent to distribute. Defendant admitted upon arrest that he possessed the powder, and admitted that he had distributed crack before, just not on that day. Defendant did not have anything on his person or in his car with which to smoke the crack. Carson, consistent with Agent Lewis's testimony, stated that typically a crack addict will purchase a small amount of crack and immediately smoke it and then seek to buy more. Finally, the amount of crack Defendant possessed exceeded the amount normally associated with personal use. *See, e.g., United States v. Nichols*, 184 F. App'x 532, 535-36 (6th Cir. 2006) (holding that the evidence was sufficient to support finding of intent to distribute where the defendant possessed eight crack rocks, which although not individually wrapped, were possessed in an area known for drug trafficking and the defendant had no means to smoke the crack in either his car or on his person); *see also United States v. Harris*, 192 F.3d 580 (6th Cir. 1999) (holding that jury could reasonably have found that the defendant intended to distribute 5.9 grams of crack where evidence also established that rocks were individually wrapped, defendant was in area known for drug trafficking, and was carrying a pistol). *Cf. United States v. McCreary-Redd*, 475 F.3d 718, 724 (6th Cir. 2001) (holding that the defendant's stipulation to factual basis stating merely that he possessed 3 grams of crack individually wrapped, without more, was insufficient to establish intent to distribute).

### C. Probative Value of Lewis's Testimony

Defendant argues that the district court's failure to assess the relevancy and probative value of Agent Lewis's testimony prior to its admission was plain error. Defendant failed to object at trial,

so instead of reviewing for abuse of discretion, *United States v. Bender*, 265 F.3d 464, 472 (6th Cir.2001) ( "A district court's admission of expert testimony, however, will not be disturbed unless the district court abused its discretion."), we review the court's admission of such testimony for plain error. *See United States v. Anderson*, 89 F.3d 1306, 1310 n.2 (6th Cir. 1996).

Initially we note that Defendant arguably waived the issue by declining to voir dire Lewis at trial when specifically invited to do so by the district court. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993) (stating that a waiver is an intentional failure to object when given the opportunity to do so). In any event, Defendant acknowledges that this Court has consistently held that expert testimony by a law enforcement officer about the method of operation of drug dealers is admissible pursuant to Fed. R. Evid. 702, *see, e.g., United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996) (and cases cited therein), and that this Court has deemed Agent Lewis qualified in this area, *see United States v. List*, 200 F. App'x 535, 545 (6th Cir. 2006) (holding that the district court did not abuse its discretion admitting expert testimony of Agent Lewis because he had 22 years of experience and extensive drug-investigation training, testified about illegal drug operations information beyond the ken of the average layman, and the district court gave the usual cautionary instruction regarding expert testimony). Instead, he argues that the district court erred in failing to assess the relevancy and probative value of Lewis's testimony.

There is no plain error. Lewis's testimony was highly relevant and helped the jury in resolving the central issue of whether Lewis possessed the crack with intent to distribute. As discussed above, Defendant acknowledges this in his brief. This Court routinely allows qualified law enforcement officials to testify that circumstances are consistent with drug distribution rather than personal use. *See, e.g., United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (and

cases therein); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004); *Thomas*, 74 F.3d at 682. Furthermore, this Court has also held that such expert testimony is not unduly prejudicial, especially if the district court has given a cautionary instruction. *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001).

### D. Scope of Lewis's Expertise

Defendant also complains that Agent Lewis's testimony regarding the quantities of cocaine base that are consistent with personal use and the quantities that are consistent with the intent to distribute clearly exceeded the scope of his expertise. There is no error, plain or otherwise, for the reasons discussed above.

Defendant also argues that the district court plainly erred because Lewis improperly stated an opinion as to Defendant's mental state, which is barred by Fed. R. Evid. 704(b). This Court has declined to find plain error based on testimony similar to Lewis's in other cases. *See, e.g., United States v. Johnson*, 488 F.3d 690, 698-99 (6th Cir. 2007); *Swafford*, 385 F.3d at 1029-30 & n.3.; *United States v. Holloway*, 257 F. App'x 869, 871-72 (6th Cir. 2007), *cert. denied*, 129 S. Ct. 178 (2008). Moreover, the statements Defendant complains of were elicited by Defendant on cross-examination when Lewis was repeatedly asked if Defendant could have possessed the crack for his personal use. Under these circumstances there is no plain error.

### E. Failure to Give Cautionary Instruction

Defendant argues that the district court erred in failing to give an additional cautionary instruction regarding Lewis's role as an expert witness. Defendant failed to object below, so this issue is reviewed for plain error.

11

There is none. Although no cautionary instruction was given when Lewis testified, the following instruction regarding Lewis's testimony was given when charging the jury:

> Members of the jury, you have heard the testimony of Dave Lewis and Celeste White, expert witnesses. An expert witness has special knowledge or experience that allows that witness to give an opinion. You do not have to accept an expert's opinion. In deciding how much weight to give it you should consider that witness'[s] qualifications and how he or she reached his or her conclusions. Remember that you alone decide how much of a witness'[s] testimony to believe and how much weight you think it deserves.

This Court in *Swafford* approved this same instruction as "properly caution[ing]" the jury. *See Swafford*, 385 F.3d at 1030 n.4; *see also Holloway*, 257 F. App'x at 872 (noting that jurors were instructed that they did not have to accept officer's opinion and that it was their duty alone to decide how much weight to give his testimony). Further, this instruction was given the morning after a one-day trial. *Cf. United States v. Wheaton*, 517 F.3d 350, 362-63 (6th Cir. 2008) (finding no plain error in failing to give an additional cautionary instruction concerning the testimony of two paid informants where the jury "received ample notice" that it should view their testimony with suspicion in accordance with Sixth Circuit pattern jury instructions). There is no plain error here.

## F. Ineffective Assistance

Defendant claims that his trial counsel was ineffective for failing to retain an expert witness to contradict Lewis's testimony on the issue of intent to distribute. Defendant acknowledges that in general this Court will not review a claim of ineffective assistance of counsel on direct appeal, but claims that the record is adequately developed to fit within the exception. *See United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006). There is no proof in this record that such an expert was available or that retaining such an expert is within the prevailing professional norm in

12

drug cases.  In short, the record is not adequately developed on this point, and this Court declines to review this claim on direct appeal.

## G.  Career Offender Status

Defendant argues that his career offender status significantly overrepresents his criminal history and that the district court erred in failing to reduce his sentence on this basis.  He points out that the prior felony drug conviction involved less than 1/2 gram of cocaine, clearly a personal use quantity.

This Court reviews a district court's sentencing determination for reasonableness, using an abuse-of-discretion standard.  *United States v. Alexander*, 543 F.3d 819, 821 (6th Cir. 2008).  This reasonableness inquiry involves both procedural and substantive components.  *Id.* at 821-22.  In assessing procedural reasonableness, we look to see if the district court properly calculated the guidelines range, treated the guidelines as advisory, considered the § 3553(a) factors, and adequately explained the sentence, including an explanation for any variance from the guidelines range.  *United States v. Presley*, 547 F.3d 625, 629-30 (6th Cir. 2008).

As for substantive reasonableness, the overall concern is whether the district court imposed a sentence sufficient, but not greater than necessary, to comply with the purposes of the statutory sentencing scheme.  18 U.S.C. § 3553(a); *Alexander*, 543 F.3d at 822.  A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider the relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.  *Presley*, 547 F.3d at 630-31.

Defendant has failed to rebut the presumption that his sentence within the advisory Guidelines range is reasonable.  The district court was within its discretion in finding that

Defendant's career offender status did not overrepresent his criminal history. Defendant's argument based on his predicate felony drug conviction being for a small amount is unpersuasive. Although Defendant was permitted to plead to this offense, the charge in that case was based upon Defendant's possession of forty-three rocks of crack in a plastic bag that he tossed as he fled from officers. Moreover, Defendant's criminal history category was not increased by his career offender status. Defendant had 19 criminal history points. Criminal history category VI is triggered at 13 points.[1] The district court was intimately familiar with Defendant's criminal history, having sentenced him on the arson conviction in 1998, and supervised him when he was released on that conviction in December 2002. The court also twice revoked Defendant's supervised release; when he committed new offenses before his full-term release in October 2004. The district court specifically noted this fact at sentencing, as well as Defendant's extensive involvement in the criminal justice system. In short, Defendant is not entitled to resentencing.

The district court stated that it had considered the nature and circumstances of the offense, the history and characteristics of the defendant, the advisory guideline range, as well as the other factors listed in § 3553(a). In considering Defendant's history and characteristics, the court noted that Defendant was thirty-one years old and had been involved in criminal conduct since he was fourteen. The court added that Defendant had "continued to commit new offenses" while on supervised release," and had been revoked twice by the district court. The court found Defendant has a "propensity for violence" as reflected by several arrests and convictions involving assault, and was facing charges for felony first-degree murder and kidnaping and participating in the killing of

---

[1]Criminal history category VI was also the applicable category due to Defendant's career offender classification. *See* U.S.S.G. § 4B1.1(b).

14

the victim. Further, the court noted that Defendant has no verifiable work history and has continued to use drugs despite receiving treatment. In the court's opinion, "Society needs protection from this defendant."

In sum, the district court's sentencing was both procedurally and substantively reasonable. Nor did the court err in refusing to grant Defendant a downward departure on the ground that a Criminal History score VI substantially overrepresented the seriousness of his criminal history. *See* U.S.S.G. § 4A1.3(b)(1). A district court's decision not to depart downward is not reviewable unless the record shows that the court was unaware of, or did not understand, its discretion to grant such a departure. *United States v. Johnson*, 553 F.3d 990, 999 (6th Cir. 2009). Nothing in the record reflects that the district court misunderstood its discretionary authority.

Finally, the record also does not reflect that the district court had a policy disagreement with the relevant guidelines necessitating a remand in light of *Kimbrough v. United States*, 128 S. Ct. 558 (2007). *See United States v. Guest*, – F.3d – , No. 07-1922, 2009 WL 1175172 (6th Cir. May 4, 2009).

### H. Pending Charges

Lastly, Defendant asserts that the district court erred in relying on the pending charges against him in selecting his sentence. The charges were the subject of an indictment and were scheduled for trial on October 2007. The district court referred to the charges in the context of finding that Defendant had a propensity toward violence and in concluding that "the only protection of society would be an extremely lengthy period of imprisonment."

The district court did not err in considering the pending charges while selecting a sentence within the advisory guideline range. *See* 18 U.S.C. § 3553(a) (directing the court to consider the

"history and characteristics" of the defendant as well as the need to protect the public); U.S.S.G. § 4A1.3(a)(2)(D) (2006) (providing that a district court may consider pending charges in determining whether an upward departure is warranted). *See also United States v. Campbell*, 221 F. App'x 459, 461 (7th Cir. 2007) (stating that judge may consider other charges pending when sentencing the defendant); *United States v. Trevino*, 268 F. App'x 277, 278 (5th Cir. 2008) (holding that district court did not err in awarding upward departure based on the defendant's extensive criminal history, including pending charges in state court); *United States v. Ellis*, 206 F. App'x 325, 327 (5th Cir. 2006) (per curiam) (holding that district court is permitted to consider pending charges as basis for upward departure). Defendant did not otherwise challenge the factual basis for the pending charges.[2]

### III.  Conclusion

The judgment of the district court is **AFFIRMED**.

---

[2]Some courts have held that the presentence report must provide specific facts underlying the arrests to justify an upward departure. *See United States v. Hawk Wing*, 433 F.3d 622, 628 (8th Cir. 2006) (discussing cases). The presentence report in this case does so.