RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

         *v.*                                          No. 09-5730

MICHAEL RODNEY HAM,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 08-00010-001—Thomas A. Varlan, District Judge.

Argued: August 4, 2010

Decided and Filed: January 7, 2011

Before: SILER and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Francis L. Lloyd, Jr., LAW OFFICE OF FRANCIS L. LLOYD, JR., Knoxville, Tennessee, for Appellant. Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Francis L. Lloyd, Jr., LAW OFFICE OF FRANCIS L. LLOYD, JR., Knoxville, Tennessee, for Appellant. Debra A. Breneman, Hugh B. Ward, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

**OPINION**

_____

CLELAND, District Judge. Michael Rodney Ham appeals his conviction for possession of cocaine base ("crack") with intent to distribute, possession of a firearm in

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

furtherance of a drug trafficking offense, and being a felon in possession of a firearm. Ham objected to few if any of his issues at trial, but now challenges the admission of certain evidence, the sufficiency of the evidence, the district court's jury instructions, certain statements by the Government in opening statement and closing argument, and his consecutive sentence under 18 U.S.C. § 924(c).  We **AFFIRM.**

## I.  BACKGROUND

The Knox County Sheriff's Office utilized a confidential informant to conduct a series of "controlled buys" of crack cocaine from a seller known as "Ace" at 1537 Virginia Avenue in Knoxville, Tennessee.  Based on these purchases, the Sheriff's Office obtained a search warrant to seize drugs from the premises.

On September 18, 2007, officers executed the search warrant.  The officers knocked and announced their presence; however, no one answered the door.  The officers therefore used a ram to forcibly enter the house.  Upon entry, the officers encountered Jabari Sheffield, also known as "Jam," and two small children in the living area.  In securing the house, officers located a bedroom door that they were unable to open easily.

The officers forcibly opened the door and found Ham hiding in the bedroom closet.  At Ham's feet, on the closet floor, officers recovered 37.4 grams of crack cocaine.  Also in the closet was a black case containing ammunition and an unloaded .380-caliber pistol, which had been reported stolen from an individual in Knox County in 2006. On top of an armoire near the closet, approximately head-high, officers located a loaded 9 mm handgun.  The officers found and seized $1,008 in cash from Ham's pockets, the bed, the armoire, and a shoebox in the closet.  The officers also seized a box of various ammunition, plastic baggies, and a set of digital scales from the bedroom, as well as three cellular telephones from the house.  A plate with a razor blade and white residue on it was located in the bathroom.

Ham was arrested and transported to a detention facility.  Upon booking, Ham's tattoos—an "Ace of Spades" and a dagger—were photographed.  Ham was charged with

possession with intent to distribute five grams or more of crack, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.

A jury convicted Ham of all counts on October 16, 2008. The district court sentenced Ham to an effective term of imprisonment of 190 months, followed by eight years of supervised release. Ham now appeals.

## II. ANALYSIS

### A. Evidentiary Issues

#### 1. Standard of Review

Generally, "[w]e review the district court's admission or exclusion of evidence for an abuse of discretion." *United States v. Davis*, 514 F.3d 596, 611 (6th Cir. 2008) (quoting *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006)). However, if the complaining party fails to object in the district court, we review for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996).

#### 2. Agent Dave Lewis

##### a. Relevance and Probative Value

Agent Dave Lewis, a special agent with the Drug Enforcement Administration ("DEA") for approximately twenty-two years, testified regarding the characteristics of crack cocaine as well as the methods involved in the distribution of the drug. Defendant argues that the district court abused its discretion because it failed to assess the relevance and probative value of Agent Lewis's testimony before he was permitted to testify. Defendant did not raise this specific objection during trial; therefore, we review the district court's decision for plain error.

We have previously rejected an identical challenge in *United States v. Alford*, 332 F. App'x 275, 281 (6th Cir. 2009), in which the defendant argued that "the district court's failure to assess the relevancy and probative value of Agent Lewis's testimony prior to its admission was plain error." *Id.* We noted that "this Court has consistently

held that expert testimony by a law enforcement officer about the method of operation of drug dealers is admissible pursuant to Fed. R. Evid. 702," *id.* (citing *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996)), and that "this Court has deemed Agent Lewis qualified in this area," *id.* (citing *United States v. List*, 200 F. App'x 535, 545 (6th Cir. 2006)).   We found no plain error in the admission of Agent Lewis's testimony, determining that it was "highly relevant and helped the jury in resolving the central issue of whether [the defendant] possessed the crack with intent to distribute." *Id.* at 281-82. There is no reason to reach a different conclusion in this case.  The district court properly admitted the expert testimony of Agent Lewis.

### b.  Personal Use Quantities

Defendant argues that the district court clearly erred by allowing Agent Lewis to testify beyond his area of expertise.  Specifically, Defendant contends that Agent Lewis's background and training does not qualify him to testify to the quantities of crack that are consistent with personal use.  This argument is without merit.  As we stated in *Alford*, "[t]his Court routinely allows qualified law enforcement officials to testify that circumstances are consistent with drug distribution rather than personal use." *Alford*, 332 F. App'x at 282 (citing *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (and cases therein); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004); *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996)).  There was no plain error.

### c.  Cellular Telephones

Defendant also argues that Agent Lewis's testimony concerning "throw-away" cellular telephones was beyond the scope of his expertise, irrelevant, and unduly prejudicial.  Agent Lewis testified, without objection, that drug traffickers often use throw-away phones because they can be set up with a fictitious name, making them untraceable.  Defendant argues that this testimony was improper because there was no evidence in the record that Defendant used any of the three phones in the manner described by Agent Lewis.

The testimony was within the scope of Agent Lewis's expertise because it concerned a "method of operation of drug dealers." *Id.* at 281. Agent Lewis's testimony explaining why the items seized from the house were consistent with drug dealing was relevant to the issue of whether Defendant intended to distribute the drugs found with him in the bedroom closet. *See Thomas*, 74 F.3d at 682 ("[W]ithout expert testimony, the average juror is unlikely to understand the significance of drug paraphernalia . . . ."). The fact that there was no *direct* evidence that Defendant used the cell phones in the way that Agent Lewis testified is of no consequence. Agent Lewis was not offered to provide percipient testimony directly demonstrating Defendant's actions. Instead, he was providing an opinion, based on extensive training and experience, about the items recovered from the residence and the reasons that they were consistent with drug trafficking. Defendant was free to cross-examine Agent Lewis to demonstrate that there were other legitimate uses for these items. In addition, the jury was instructed that they did not have to accept the opinion testimony and that they should consider how the witness reached his conclusion. Accordingly, we find nothing prejudicial in Agent Lewis's testimony concerning throw-away cellular telephones and conclude there was no error in its admission.

### 3. Investigator Chris Bryant

Chris Bryant, an investigator with the narcotics unit of the Knox County Sheriff's Office, testified predominantly regarding the "controlled buys" and the execution of the search warrant. He also explained to the jury that items such as scales and plastic sandwich bags are used in the drug trade just as they are in the average household: to weigh and to package things. Defendant argues that the district court erred by allowing Bryant's "transformation from a fact witness to an opinion witness." (Appellant's Br. 12.) Defendant did not object to Bryant's passing comments about these few items of evidence at trial. We review for plain error.

Although testimony concerning drug dealing is specialized knowledge "not within the experience of the average juror," *United States v. Lopez-Medina*, 461 F.3d 724, 742 (6th Cir. 2006), we are hard-pressed to declare ourselves convinced that

Bryant's testimony concerning plastic baggies and scales constitutes "expert testimony" that must comply with the well-known admissibility requirements. But, for the sake of discussion, we will address it as if it did.

The admission of this "expert testimony" presents two issues; neither warrants reversal. First, in its Rule 16 disclosure, the Government did not provide Defendant with notice that Bryant would comment about plastic baggies and scales. Nonetheless, Defendant was in no way prejudiced by this absence. The Government's Rule 16 disclosure notified Defendant that expert testimony concerning the general practices of drug dealers would be introduced at trial. Defendant thus "did not suffer any surprise," a point underscored by his attorney's silence as Bryant's brief testimony on these points was heard. *United States v. White*, 492 F.3d 380, 407 (6th Cir. 2007) (quoting *United States v. Tarwater*, 308 F.3d 494, 515 (6th Cir. 2002)). More fundamentally, he has failed to show "how the outcome of the case would have been different" had he received notice. *Id.*

Second, when a witness gives both fact and expert testimony, the district court must give "a 'cautionary jury instruction regarding the [witness's] dual witness roles'" or there must be "'a clear demarcation between [the witness's] fact testimony and expert opinion testimony.'" *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010) (quoting *Lopez-Medina*, 461 F.3d at 745). The district court did not give a dual-witness instruction and there was not a clear demarcation between the fact and expert testimony. Even so, Defendant cannot show that this error "affected substantial rights" and "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 541 (quoting *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997)). The district court's instruction, which told the jurors that they could reject the opinions given and that they should consider how the witnesses reached their conclusions, was adequate to "guard against the risk of confusion inherent when a law enforcement agent testifies as both a fact witness and as an expert witness." *Lopez-Medina*, 461 F.3d at 744. Moreover, there were no other evidentiary errors in this case. *See United States v. Vasquez*, 560 F.3d 461, 470-71 (6th Cir. 2009) (noting that "we have declined to extend

the holding in *Lopez-Medina* to circumstances in which there were no other evidentiary errors"). And in light of the other substantial evidence of Defendant's guilt in this case, particularly the distribution quantities of crack cocaine discovered at Defendant's feet in the closet, Investigator Bryant's "dual testimony here is insufficient to 'show [] an actual effect on the outcome of the case.'" *United States v. Martin*, 520 F.3d 656, 660 (6th Cir. 2008) (quoting *Lopez-Medina*, 461 F.3d at 745) (alteration in original). Defendant has not shown that he is entitled to a reversal of his conviction.

### 4. Jabari Sheffield's Crack Cocaine Complaint and Judgment

Defendant alleges that the district court erred by refusing to admit into evidence a complaint against Jabari Sheffield for possession of 9.6 grams of crack cocaine for resale and a judgment showing her subsequent guilty plea to simple possession of cocaine. The complaint states that officers recovered the crack cocaine from Sheffield on Bonnyman near Oldham, on June 2, 2007. The district court sustained the Government's objection, concluding that the exhibit could not be introduced for impeachment purposes under Federal Rule of Evidence 609 because Sheffield was not testifying and that the exhibit was not relevant to whether Defendant was guilty of the crimes charged. Defendant argues that this was error because the trial court should have analyzed the admissibility under Federal Rule of Evidence 803(8)(C) and 804(b)(3).

Defendant's argument misses the mark. The evidence was not excluded because it was hearsay, and it does not matter whether an exception to the hearsay rule might apply.

Nor do we find that the district court abused its discretion in sustaining the Government's objection to evidence that was not relevant. The evidence suggesting that Sheffield was dealing drugs at another location does not bear on any fact of consequence in this case. Sheffield's potential involvement in drug trafficking activities—others or those implicated in this case—does not make the question of Defendant's guilt more or less likely. Indeed, the Government was not required to prove that it was Defendant, to the exclusion of all others, who possessed the drugs and firearms in this case. Even if Sheffield jointly possessed the guns and drugs at 1537 Virginia Avenue, Defendant

could still be found guilty.  *United States v. Gibbs*, 182 F.3d 408, 425 (6th Cir. 1999) (citing *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)).  The district court did not abuse its discretion in refusing to admit the evidence regarding Jabari Sheffield's crack cocaine charge and guilty plea.

### 5.  Stolen Firearm

Special Agent Rebecca Bobich testified that the .380-caliber pistol recovered from the bedroom closet was reported stolen in Knox County on October 21, 2006. Defendant argues that this evidence was not relevant to any of the offenses charged in this case.  Defendant is mistaken.  The legality of the possession of a firearm is a factor to consider in determining whether the firearm was possessed in furtherance of a drug trafficking offense.  *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001).  Any prejudice to Defendant was minimized by the district court instructing the jury, twice, that Defendant was on trial only for the crimes charged in the indictment.  R. 42 at 128, 143.  There was no error in the admission of Special Agent Bobich's testimony.

## B.  Sufficiency of the Evidence

This Court reviews *de novo* a defendant's claim of insufficiency of the evidence. *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009).  "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, we are limited to ascertaining whether, viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### 1.  Possession of Cocaine Base with Intent to Distribute

"To establish a violation of § 841(a)(1), the government must prove the following elements: '(1) knowing (2) possession of a controlled substance (3) with intent to distribute.'"  *Mackey*, 265 F.3d at 460 (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986)).

Defendant argues that, aside from Agent Lewis's testimony that the crack was packaged for distribution and was "way too much for personal use" and Investigator Bryant's testimony regarding the scales and baggies, there was insufficient evidence that Defendant possessed the crack with intent to distribute. Contrary to Defendant's argument, "*all of the evidence* is to be considered" when reviewing for sufficiency of the evidence. *Jackson*, 443 U.S. at 319. As discussed above, the admission of Agent Lewis's testimony was not error. Therefore, there is no reason to set aside Agent Lewis's testimony about how the drugs were arranged for distribution in three-gram packages, worth $150 to $200 a piece, and that 37.4 grams, representing a minimum of 370 doses, is too much for personal use. This is competent evidence that well supports the jury's verdict.

Additional evidence also supported the conviction. Investigator Bryant testified that the confidential informant made a series of controlled buys from a person he referred to as "Ace" at 1537 Virginia Avenue. Defendant sports an "Ace of Spades" tattoo, and was within a locked bedroom at that Virginia Avenue address. Defendant's plan to avoid apprehension was to hide in the closet with more than 37 grams of crack cocaine at his feet. Any reasonable jury could have concluded that Defendant was the same "Ace" who was selling drugs to the confidential informant. We wonder what jury would *not* reach that conclusion. Moreover, the jury could have inferred solely from the possession of this large quantity of drugs that Defendant intended to further distribute it. *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) (18 grams of crack cocaine sufficient for an inference of intent to distribute); *United States v. Clemons*, 9 F. App'x 286, 289 (6th Cir. 2001) (8.5 grams of crack cocaine "was large enough to draw an inference of intent to distribute"). In addition, Investigator Bryant testified that firearms were recovered nearby the drugs, $1,008 was recovered from the bedroom, and no drug paraphernalia to use the crack was recovered. *See United States v. Wilson*, 27 F.3d 1126, 1133 (6th Cir. 1994) (recognizing "the connection between guns and drug trafficking"); *United States v. Collier*, 246 F. App'x 321, 330 (6th Cir. 2007) (recovery of $1,900 from the defendant's pocket supported conclusion that the defendant was selling drugs). The evidence presented was more than sufficient to support the jury's

finding, beyond a reasonable doubt, that Defendant was guilty of possessing crack with intent to distribute.

### 2. Possession of a Firearm in Furtherance of a Drug Trafficking Offense

Under 18 U.S.C. § 924(c), any person "who, in furtherance of [a drug trafficking] crime, possesses a firearm, shall, in addition to the punishment provided for [the] drug trafficking crime– (i) be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i).  To prove the possession was "in furtherance of" the drug trafficking crime, the Government must show a "specific nexus between the gun and the crime charged" and that the firearm "was strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d at 462.  Other factors to consider include: (1) "whether the gun was loaded," (2) "the type of weapon," (3) "the legality of its possession," (4) "the type of drug activity conducted," and (5) "the time and circumstances under which the firearm was found." *Id.*

We applied the *Mackey* factors in *Swafford* and concluded that each of the factors supported the conclusion that the defendant possessed the firearm "in furtherance of" the drug offenses.  *Swafford*, 385 F.3d at 1029.  There, the firearm was a loaded semiautomatic pistol found within arm's reach of where the defendant was lying. *Id.* A DEA Agent testified that these weapons "play a role in drug distribution, as dealers carry them for protection and intimidation purposes." *Id.*  The defendant was a convicted felon and could not lawfully possess the gun. *Id.*  Also, "the gun was discovered as the officers executed a search warrant looking for drugs, which they ultimately found." *Id.*  Even though the drugs were not found in the same room as the gun, we concluded that the evidence was sufficient to support the defendant's conviction. *Id.*

Application of the factors from *Mackey* leads us to the same conclusion.  The loaded 9 mm pistol in this case was located about head-high on top of an armoire situated just outside the closet where the drugs were found.  It was "strategically located so that it [was] quickly and easily available for use." *Mackey*, 265 F.3d at 462.  Similar to the DEA Agent's testimony in *Swafford*, Agent Lewis testified that persons involved

in drug trafficking almost always have guns because "[i]t's an illegal business, and the only way they can protect this illegal business is through violence or the threat of violence." R. 42 at 77. Like Swafford, Defendant could not lawfully possess a handgun because he was a convicted felon. *Swafford*, 385 F.3d at 1029. Also, as in *Swafford*, "the gun was discovered as the officers executed a search warrant looking for drugs, which they ultimately found." *Id.* The nexus between the offense and gun is even stronger than in *Swafford* because the gun was found in closer proximity to the drugs, i.e., in the same room. We conclude that a rational trier of fact could have found beyond a reasonable doubt that Defendant possessed a firearm in furtherance of a drug trafficking offense.

## C. District Court's Instructions

### 1. Failure to Give a Cautionary Instruction

Defendant argues that the district court's failure to give a cautionary instruction following Agent Lewis's testimony was plain error. This Court addressed a similar challenge to a district court's failure to give a cautionary instruction following Agent Lewis's testimony in *Alford*. 332 F. App'x at 282. We found no plain error because, when the district court charged the jury the morning after the one-day trial, it gave a cautionary instruction on opinion testimony that was the same as the instruction in *Swafford*. *Id.* at 282-83.

The district court here gave a cautionary jury instruction regarding opinion testimony that was very similar to the charge given in *Swafford*. 385 F.3d at 1030 n.4. In addition, the district court gave a general instruction about weighing witness testimony. These instructions were given mere hours after Agent Lewis testified. Accordingly, we find no plain error in the district court's failure to also instruct the jury immediately following Agent Lewis's testimony.

### 2. Burden of Proof

Defendant takes issue with the district court's instruction to the jury during *voire dire* that "the burden of proof is on the government until the very end of this case."  R. 41 at 13.  Defendant acknowledges that the district court gave an accurate instruction after the close of evidence, and that he did not object to the court's language during *voir dire*, but argues that the instruction constituted plain error because it implied the burden might shift to Defendant.

"This court reviews jury instructions *as a whole* to determine whether they fairly and adequately inform the jury of relevant considerations and explain the applicable law to assist the jury in reaching its decision." *United States v. Prince*, 214 F.3d 740, 760-61 (6th Cir. 2000) (citing *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999); *United States v. Harrod*, 168 F.3d 887, 890 (6th Cir. 1999)) (emphasis added).  Reversal is warranted "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (citation and internal quotations omitted).

The challenged instruction does not suggest a burden shift, and is not improper as stated.  We believe that a jury would think of "the very end of this case" as that time when they have rendered a verdict and their service has ended.

In addition, even if the instruction were seen, standing alone, as implying a burden shift, the court extensively instructed the jury that it was always the Government's burden to prove Defendant guilty beyond a reasonable doubt.  There is no risk of confusion or misconception to be found here.

## D.  Prosecutorial Misconduct

"When we review claims of prosecutorial misconduct, we determine whether the prosecutor's statements were both improper and flagrant." *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008).  Flagrancy is evaluated based on four factors: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against

the defendant." *Id.* (quoting *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006)). Inappropriate but isolated statements do not warrant a new trial. The prosecutorial misconduct must have been "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994) (quoting *United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993)).

### 1. Opening Statements

Defendant argues—briefly—that he was prejudiced by the Government stating during its opening statement that "on the armoire was some marijuana and some pills." Defendant stated no objection then, but argues now that the statement was irrelevant to the charges against him and no evidence concerning marijuana and pills was introduced at trial.

"Prosecutors should put forth only 'proper arguments based on the evidence in the record.'" *Davis*, 514 F.3d at 613 (quoting *Broom*, 441 F.3d at 412). "The purpose of the opening statement of the prosecution is to outline broadly the facts of the case so that the jury will understand the evidence as it unfolds." *United States v. Signer*, 482 F.2d 394, 399 (6th Cir. 1973).

The prosecutor's opening statement, to the extent that it referred briefly to "marijuana and pills" purportedly found during the search was not later supported by testimony. But we find no basis to conclude that the statement was flagrant, even though it was, by one measure or another, a mistake. It was an isolated remark and, given that the specifics of the search warrant execution would be a focus of the trial, there is no indication that it was a deliberate attempt to inject inflammatory or damning "evidence" that was never to be introduced. Moreover, the district court instructed the jury twice that the statements and arguments of attorneys are not evidence. R. 41 at 68; R. 42 at 123. The prosecutor's fleeting reference to "pills" and "marijuana" was, in this case, of no more import than a few stray raindrops in a shower. It was in no way "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Bond*, 22 F.3d at 667. Accordingly, we find no reversible error.

## 2. Closing Arguments

Defendant argues that the Government improperly referred to the names of his prior convictions—possession of cocaine with intent to sell and possession of a handgun by a felon—during its closing argument.[1] The Government referred to the names a total of four times—twice during its initial closing argument and twice during its rebuttal.

Three of the instances are clearly in reference to the proper argument that Defendant is a convicted felon, an element of the crime of being a felon in possession of a firearm. Defendant cites no authority precluding the Government from referring to properly admitted evidence that is essential to the Government's case-in-chief during closing arguments. Although statements that are permissible in isolation may, in aggregate, demonstrate an improper purpose, we find no evidence of an improper purpose in this case.

Nonetheless, the fourth instance, in which the Government appeals to the jury's "common sense," comes close to the line. Based on the context, it is unclear whether the Government was suggesting that the jury consider the prior convictions as propensity evidence, evidence of an intent to distribute, or evidence that Defendant was a convicted felon. The reference is sufficiently ambiguous that it is unlikely the jury would view this as an invitation to consider the evidence for an improper purpose. Moreover, the district court gave a limiting instruction explicitly informing the jury that they may consider the prior convictions only as evidence relating to the element of Defendant having been previously convicted of a felony. The general rule is that a jury is presumed to follow the district court's instructions, *see United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.

---

[1] During oral argument, Defendant clarified that his argument concerning his prior convictions was based on a theory of prosecutorial misconduct. In his brief, Defendant argues that the probative value of the evidence of his prior convictions is substantially outweighed by its prejudicial effect. This argument also fails. The Government was obligated to prove beyond a reasonable doubt that Defendant had a previous felony conviction. *See United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998). Had Defendant offered to stipulate to this element of the offense, it would have been an abuse of discretion for the district court to reject it. *Old Chief v. United States*, 519 U.S. 172, 174 (1997). But he did not. The well-worn *Old Chief* ball was in Defendant's court, and he either failed or affirmatively decided to not act. The prejudice inhering to a defendant in choosing such a course is potentially substantial, but there can be "no question" that the probative value of the evidence of Defendant's prior convictions is not substantially outweighed by the danger of unfair prejudice. *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998) (citation omitted).

1991), and we see no reason why the jury in this case would have been unable to heed these instructions. Accordingly, we find no plain error.

**E. Sentencing**

We also consider whether the consecutive component of Defendant's 190-month sentence was proper. Defendant was sentenced to 130 months for possession with intent to distribute cocaine base, 120 months for being a felon in possession of a firearm (to run concurrently with the 130 months), and 60 months for possessing a firearm in furtherance of a drug trafficking offense. The 60-month consecutive sentence was imposed under 18 U.S.C. § 924(c) as the mandatory minimum sentence for possessing a firearm in furtherance of a drug trafficking offense. Defendant challenges the imposition of this sentence under § 924(c), arguing that it is inconsistent with our decision in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010), *vacated*, No. 09-1497, 2010 WL 2300485 (Nov. 29, 2010). After oral argument, the parties submitted supplemental briefs in which they agreed that this sentence runs contrary to *Almany*'s lesson that the mandatory minimum sentences provided in § 924(c) do not apply to defendants who face longer mandatory sentences under other provisions of law. 598 F.3d at 242. The Government, however, challenged the validity of *Almany* and requested the court defer decision until the Supreme Court released its decision on the interpretation of § 924(c) in *Abbott v. United States*, No. 09-479, which was issued on November 15, 2010.

As in this case, the sentence in *Almany* included a ten year mandatory sentence for drug trafficking offenses and a five year mandatory sentence for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). 598 F.3d at 241. Section 924(c) reads, in relevant part:

> *Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who, . . . in furtherance of any such crime, possesses a firearm, shall, in addition the punishment provided for such crime of violence or drug trafficking crime - (i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is

> discharged, be sentenced to a term of imprisonment of not less than 10
> years.

18 U.S.C. § 924(c)(1)(A) (emphasis added).  Upon indistinguishable facts, the *Almany* panel held that the plain language of the statute proscribes application of the five year mandatory minimum sentence together with a longer mandatory minimum sentence. 598 F.3d at 242.  Quoting with approval the case of *United States v. Whitley*, 529 F.3d 150, 156 (2d Cir. 2008), the court noted that "we have repeatedly been instructed to give statutes a literal reading and apply the plain meaning of the words Congress used." *Almany*, 598 F.3d 242.  The court then interpreted the "except" clause reference to "any other provision of law" to except from the mandatory minimum sentence of § 924(c) those cases where a defendant receives a greater mandatory sentence under any law. *Id.*

The Supreme Court's opinion in *Abbott,* however, held that the language in § 924(c) refers only to other provisions imposing longer mandatory sentences "for the conduct § 924(c) proscribes, *i.e.*, possessing a firearm in connection with a predicate crime." 131 S. Ct. 18, 26 (2010).  Looking to the history of § 924(c) and the structure of the section, the Court in *Abbott* construed the "except" clause to apply only to provisions mandating a more severe sentence for the use of firearms in the commission of a crime. *Id.*  The Court examined the history of the statute, particularly noting the title of the 1998 revision evinced a clear intent "to throttle the criminal use of guns." *Id.* at 27.  Considering the interaction with other statutes, the Court in *Abbott* emphasized the "sentencing anomalies" that would result from a plain reading of the language "any other provision of law." *Id.*  Under a literal interpretation of § 924(c), as in *Almany*, a defendant facing a five-year mandatory sentence for distributing a small quantity of drugs would face the additional mandatory seven years if he brandished a firearm, whereas a similarly situated defendant who distributed a quantity sufficient to require a ten-year mandatory sentence for distribution would be saved by the "except" clause. *Id.*  A more cabined application of the phrase "any other provision of law" was determined necessary to "give[] effect to the statutory language commanding that all § 924(c) offenders shall receive additional punishment for their violation of that provision." *Id.* at 29.

After deciding *Abbott*, the Supreme Court granted certiorari and vacated *Almany*. No. 09-1497, 2010 WL 2300485 (Nov. 29, 2010). Under *Abbott*, a mandatory minimum sentence under § 924(c) must run consecutively with any mandatory sentences for predicate crimes, as well as for other unrelated crimes. The "except" clause in § 924(c) prohibits only the imposition of multiple consecutive mandatory sentences under § 924 for using a firearm in the commission of a violent or drug trafficking crime. 131 S. Ct. at 29. Accordingly, a mandatory seven-year sentence for brandishing a firearm in the commission of certain crimes would be merged into a mandatory ten-year sentence for discharging it, and a mandatory five-year sentence for possessing a firearm in the commission of certain crimes would be merged into a mandatory seven-year sentence for brandishing it. *Id.* at 23.

### III. CONCLUSION

Defendant's five-year mandatory sentence under § 924(c) was proper even in view of his ten-year mandatory sentence under § 841. The judgment of conviction of the district court is **AFFIRMED**.