**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0415n.06

**No. 09-5384**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jun 27, 2011***

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

**v.**

**GARY KEVIN ADKINS,**

     **Defendant-Appellant.**

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

                                    /

**BEFORE:**    **COLE, CLAY, and GILMAN, Circuit Judges.**

     **CLAY, Circuit Judge.** Defendant Gary Kevin Adkins was convicted, following a jury trial of: (1) conspiring to distribute, and possessing with intent to distribute, 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; (2) aiding and abetting the distribution of a quantity of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; (3) possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); (4) possessing two firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and (5) possessing a quantity of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 844. The district court sentenced

Defendant to a 262 month term of imprisonment for the drug convictions to run consecutively with an additional 60 month term of imprisonment for the firearm convictions.

Defendant now appeals his conviction and sentence.

For the reasons stated below, we **AFFIRM** the district court's judgment.

## STATEMENT OF FACTS

In early July 2007, a confidential informant informed Morristown, Tennessee police officers that Defendant regularly sold methamphetamine from his residence at 5957 Old White Pine Road, Morristown, Tennessee. On July 6, 2007, the informant placed a call to Defendant to arrange a controlled buy of half an ounce of methamphetamine for $1,000. Defendant told the informant to call back in fifteen minutes. Fifteen minutes later, the informant called Defendant a second time, at which time Defendant stated that he was personally unavailable to deliver the drugs, but would send someone to meet the informant at a local Hardee's restaurant to deliver the drugs. Law enforcement officers monitored and recorded both calls.

While the informant was placing the two monitored calls to Defendant, Tennessee Bureau of Investigation ("TBI") special agent Jim Williams was conducting a surveillance of Defendant's residence. When the two calls were completed, Agent Williams followed a green pick-up truck, registered to Defendant, from Defendant's residence to the designated Hardee's. Accompanied by TBI Special Agent Gregg McNamara, the informant traveled to the Hardee's to execute the controlled buy. En route, the informant placed a third monitored and recorded call to Defendant in which Defendant confirmed that Defendant's emissary would arrive at the Hardee's in a green pick-up truck.

Upon arriving at the Hardee's, the informant exited the vehicle in which he arrived with Agent McNamara, and got into the green pickup truck. After a short time, the informant returned to Agent McNamara with a small plastic bag containing a substance that field-tested positive for methamphetamine. An agent followed the green pickup truck back to Defendant's residence.

Based on this encounter, Agent McNamara prepared an affidavit for a warrant to search Defendant's residence. The same day, a Hamblin County, Tennessee judge granted the search warrant, and law enforcement agents executed it. While agents were in the midst of their search, Defendant arrived at his residence, and TBI Special Agent Carl Richard Walker advised Defendant of his *Miranda* rights. Defendant acknowledged that he understood his rights, but nevertheless indicated that the agents would find additional methamphetamine in an outbuilding on his property.

During their search of Defendant's residence, agents seized approximately two pounds of methamphetamine, $125,000 in cash, a handwritten recipe for methamphetamine, and two loaded firearms. The drugs and guns were found in Defendant's outbuilding, while the currency and methamphetamine recipe were found inside Defendant's residence.

Agents arrested Defendant and transported him to the Morristown, Tennessee Police Department. At the station, Agent Williams read Defendant his *Miranda* rights for a second time, and Defendant signed a form stating that he understood his rights. Defendant then waived his rights, and gave a statement detailing his drug trafficking activities.

Defendant was indicted on December 11, 2007, and charged in a six count superceding indictment on April 8, 2008. Defendant was charged with: (1) conspiring to distribute, and possessing with intent to distribute, 500 grams or more of a mixture and substance containing

methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; (2) aiding and abetting the distribution of a quantity of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; (3) possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); (4) and (5) possessing two firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and (6) possessing a quantity of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On March 17, 2008, Defendant moved to suppress his July 6, 2007 statements, arguing that the affidavit in support of the search warrant did not establish that probable cause existed for the search. The suppression question was referred to a magistrate judge who conducted an evidentiary hearing. Ultimately, based on the magistrate judge's report and recommendation, the district court denied Defendant's suppression motion, finding that Agent McNamara's corroboration of the infomant's information regarding Defendant's illegal activities constituted probable cause.

Defendant's case proceeded to jury trial on July 18, 2008. Several agents testified regarding the details of the warrant and attendant search of Defendant's residence, and Defendant's voluntary waiver of his *Miranda* rights. At the trial's close, the jury found Defendant guilty on all counts.

The district court sentenced Defendant on March 31, 2009. The Presentence Investigation Report ("PSR") calculated Defendant's advisory guidelines range as follows: 262 to 327 months of incarceration for counts one, two, and three; 15 days of incarceration for count six to be served concurrent to the term of imprisonment for counts one through three; and 60 months of

imprisonment to be served consecutive with the other sentence as required by 18 U.S.C. § 924(c).

After discussing the sentencing options and the 18 U.S.C. § 3553(a) factors, the district court sentenced Defendant to a 262 month term of imprisonment for the drug offenses, to be followed by a statutorily-mandated consecutive 60 month term of imprisonment for the firearms offenses.

Defendant timely appealed.

## DISCUSSION

### I. Mandatory Five Year Term of Imprisonment Pursuant to 18 U.S.C. § 924(c)(1)(A)

#### A. Standard of Review

This Court reviews questions of statutory interpretation *de novo*. *See United States v. Almany*, 598 F.3d 238, 241 (6th Cir. 2010); *United States v. Stephens*, 118 F.3d 479, 481 (6th Cir. 1997).

#### B. Analysis

Pursuant to 18 U.S.C. § 924(c)(1)(A), the district court sentenced Defendant to a mandatory minimum 60 month term of incarceration to be served consecutive to Defendant's 262 month term of imprisonment for his drug convictions. Defendant contends that § 924(c)(1)(A) is inapplicable to him because he was subject to a 10 year statutory mandatory minimum sentence under 21 U.S.C. § 841, and, as a matter of statutory interpretation, the district court erred in imposing this additional sentence on Defendant.

Section 942(c)(1)(A) states in relevant part:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –

(i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A).

In its recent decision in *Abbott v. United States*, 131 S. Ct. 18 (2010), the Supreme Court explained that by including the language "[e]xcept to the extent that a greater minimum sentence is otherwise provided . . . by any other provision of law," in § 924(c)(1)(A), "Congress meant[,] [i]f another provision of the United States Code mandates a punishment for using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of violence, and that minimum sentence is longer than the punishment applicable under § 924(c), then the longer sentence applies." *Abbott*, 131 S. Ct. at 28. Therefore, the Supreme Court held that,

a defendant is subject to a mandatory consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause . . . a § 924(c) offender is not subject to stacked sentences for violating § 924(c) . . . . He is, however, subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum.

*Id*. at 23.

Following *Abbott*, we explained that "the language of § 924(c) refers only to other provisions imposing longer mandatory sentences for the conduct § 924(c) proscribes, *i.e.*, possessing a firearm in connection with a predicate crime." *United States v. Ham*, 628 F.3d 801, 812 (6th Cir. 2011).

Based on this holding, we explained that "a mandatory minimum sentence under § 924(c) must run consecutively with any mandatory sentence for predicate crimes, as well as for other unrelated crimes. The 'except' clause in § 924(c) prohibits only the imposition of multiple consecutive mandatory sentences under § 924 for using a firearm in the commission of a violent drug trafficking crime." *Id*. at 813.

In its brief to this Court, the government "conced[ed] that . . . Defendant's sentence must be vacated and remanded for resentencing." (Br. of Appellee at 14.) The government's conclusion was based on this Court's holding in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010), that "the plain language of [§ 924(c)] forbids a court from sentencing a criminal defendant under both the mandatory minimum sentence found in the firearm statute and another, greater mandatory minimum sentence in any other provision of law." *Id*. at 241. However, "[a]fter deciding *Abbott*, the Supreme Court granted certiorari and vacated *Almany*." *Ham*, 628 F.3d at 812. *See also United States v. Almany*, 131 S. Ct. 637 (2010). Therefore, "[w]hile [Defendant's] argument that the district court erred [in] imposing consecutive mandatory minimum sentences pursuant to section 924(c) once had traction, the Supreme Court's decision in *Abbott* . . . foreclose[d] any further discussion on this issue." *United States v. Clark*, 634 F.3d 874, No. 08-6174, 2011 U.S. App. LEXIS 5987, at *7 (6th Cir. Mar. 24, 2011) (internal citations omitted).

The district court thus did not err in sentencing Defendant to a five year term of imprisonment to run consecutive to his 262 month term of imprisonment.

**II.     Sufficiency of the Evidence for Conviction Under 18 U.S.C. § 924(c)**

      **A.     Standard of Review**

We review a challenge based on sufficiency of the evidence *de novo*. *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010). However, when reviewing for the sufficiency of evidence in support of a jury verdict, we view the evidence in the light most favorable to the prosecution and give the prosecution the benefit of all reasonable inferences from the testimony. The question we must ask is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006). "Where . . . a defendant does not render his motion for judgment of acquittal for insufficiency of the evidence at the close of all of the proofs, appellate review is limited to determining whether there was a manifest miscarriage of justice. A miscarriage of justice exists when the record is devoid of evidence pointing to guilt." *United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009).

In this case, at the close of evidence Defendant moved for a judgment of acquittal on the firearms charges under 18 U.S.C. § 924(c). (R.61, Trial Tr. at 121.) Defendant's sufficiency of the evidence claim is thus properly preserved for appellate review.

###    B.    Analysis

As an initial matter, it is important to note that "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007). We "do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Instead, this Court is "bound to make all reasonable inferences and credibility choices in support of the jury's verdict," *Jackson*, 473 F.3d at 669-70, and "even circumstantial evidence alone is sufficient to sustain a

conviction and such evidence need not remove every reasonable hypothesis except that of guilt."
*Hilliard*, 11 F.3d at 620.

In this case, Defendant was convicted of two counts of possessing a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c). Section 924(c) mandates that a minimum sentence be imposed on "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime." Defendant does not dispute his possession of the firearms in question. Rather, he contends that his possession was not "in furtherance" of a drug trafficking crime.

We have explained that the term "in furtherance of," as used in § 924(c), "should be understood in its ordinary or natural meaning, which . . . is a helping forward: advancement, promotion. In other words, the weapon must promote or facilitate the crime." *United States v. Mackey*, 265 F.3d 457, 460-61 (6th Cir. 2001) (internal citations omitted). Therefore, "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime." *Id*. at 462. Mere "possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Penny*, 576 F.3d at 315.

According to our explication of § 924(c), to convict a defendant of possessing a firearm in furtherance of a conspiracy,

> [t]he government must clearly show that a firearm was possessed to advance or
> promote the commission of the underlying offense. The mere presence of a firearm
> in an area where a criminal act occurs is not a sufficient basis for imposing [a §
> 924(c)] mandatory sentence. Rather, the government must illustrate through specific

9

facts, which tie the defendant to the firearm, that the firearm was possessed to advanced or promote the criminal activity.

*Mackey*, 265 F.3d at 461. "[F]actors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*. at 462.

Therefore, "[i]n order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id*. Consequently, this Court has stated that "although possession of a firearm [o]n the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as to provide defense or deterrence in furtherance of the drug trafficking are used in furtherance of a drug trafficking crime." *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004).

During Defendant's trial, Agent Williams testified regarding the general role of firearms in drug trafficking. Agent Williams stated that the purpose of guns in drug trafficking is to "protect [drug traffickers'] drugs and their assets, their money from other drug dealers or anyone . . . they may deem necessary to need the weapon for protection." (R.61, Trial Tr. at 24.) When Defendant's counsel asked whether "it would be fair to say guns are used to protect the drug trafficker himself or herself from being robbed, from whatever taken from them, money drugs or whatever?" (*id*. at 45), Agent Williams further affirmed that drug traffickers typically use firearms to protect themselves, their drugs, and their assets during drug transactions.

Witnesses also testified to several details regarding the firearms' placement and status when they were seized. Detective Mike Hurt, a narcotics officer with the Morristown Police Department, testified that he "first conducted a search of the trailer, the mobile home [Defendant's residence], and later after that [he] conducted a search of an outbuilding" located on Defendant's property. (*Id*. at 64.) Detective Hurt testified that "a set of digital scales . . . [and] a bag of meth," (*id*. at 65-66) as well as "a large amount of cash" (*id*. at 68) were all "found in the outbuilding." (*Id*. at 66.) Also found in the outbuilding were "a black [D]erringer handgun," (*id*.) "a semi-automatic handgun," (*id*. at 72) specifically, "a [P]hoenix arms .22 caliber handgun," (*id*. at 73) and "a magazine from the [phoenix] handgun with 22 rounds in it." (*Id*. at 74.) Detective Hurt further testified that upon discovery, the Derringer handgun "was loaded . . . [with] two rounds," (*id*. at 67), and the Phoenix handgun was also loaded. (*Id*. at 61.)

> In denying Defendant's motion for acquittal, the district court stated that,
>
> the evidence viewed most favorably to the government establishes that these firearms were located on premises which were at least under the constructive control of the Defendant. They were loaded firearms, located in close proximity to drugs, also located on the same premises which were under the constructive control of the Defendant. The court has heard testimony that firearms are typically used to protect drug dealers, their product and the proceeds from the sale of those products . . . . There were actually significant amounts of money found as well in close proximity to the firearms. In short, there is sufficient evidence in this record from which the jury could find all of the elements of the [§ 924(c)] firearms offenses, and the motion [for acquittal] will be denied as to those counts.

(*Id*. at 122-23.)

For these reasons, a rational trier of fact could have found that Defendant possessed the firearms "to advance or promote the commission of the [the drug trafficking] offense," beyond a reasonable doubt. *Mackey*, 265 F.3d at 461. "[V]iew[ing] the evidence in the light most favorable

to the prosecution and giv[ing] the prosecution the benefit of all reasonable inferences from the testimony," *Caver*, 470 F.3d at 232, the government demonstrated the following pieces of evidence at trial: drug traffickers generally use firearms to protect their drugs and money during drug transactions; law enforcement agents found two firearms in an outbuilding on Defendant's property; the firearms were loaded; and agents also found a large amount of methamphetamine in the outbuilding.  In the aggregate, these facts suggest a "specific nexus," *Mackey*, 265 F.3d at 462, between Defendant's firearms and his drug trafficking offenses, namely that Defendant maintained his  firearms in his outbuilding with his methamphetamine to protect Defendant, and his drugs, when transacting business in his outbuilding.

A reasonable jury could have found that Defendant's firearms were advancing Defendant's drug trafficking activities, and thus that Defendant possessed the firearms "in furtherance" of drug trafficking crimes.

### III.    Motion to Suppress

#### A.    Standard of Review

"When reviewing the denial of a motion to suppress evidence, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*.  A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009).

"The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*.  "The district court's finding that there was probable cause to support the warrant is reviewed *de novo*." *United States v. Higgins*, 557 F.3d 381, 389 (6th

Cir. 2009). Moreover, in reviewing a district court's denial of a motion to suppress, we "review all evidence in the light most favorable to the government." *Gunter*, 551 F.3d at 479.

### B. Analysis

Defendant contends that the affidavit supporting the July 6, 2007 warrant to search his residence at 5957 Old White Pine Road, Morristown, Tennessee, was insufficient to establish probable cause that evidence of criminal activity would be found. Defendant contends that "the affidavit supporting the warrant to search [Defendant's] person and property was based only on a general statement by an unidentified confidential informant with no indicia of reliability and contained insufficient corroborating evidence." (Br. of Appellant at 2.) Therefore, Defendant argues that the district court erred in failing to suppress the evidence seized at his residence pursuant to the search warrant, and Defendant's July 6, 2007 statements.

The Fourth Amendment to the Constitution states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To satisfy the Fourth Amendment's warrant requirement, a magistrate issuing a warrant must be satisfied that probable cause exists for a search.

"[When] an affidavit is the basis for a probable cause determination, that affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In such a case, review of the sufficiency

of the evidence supporting probable cause, "is limited to the information presented in the four corners of the affidavit." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

In issuing a warrant, the magistrate must "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gunter*, 551 F.3d at 479 (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)); *see also Higgins*, 557 F.3d at 389. "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). However, we have stated that "independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause." *Id*. at 307. "As long as the issuing judge can conclude independently that the information is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *Coffee*, 434 F.3d at 893.

Therefore, "in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Jackson*, 470 F.3d at 307. "[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroboration." *Id*. "In sum, an affidavit that supplies little information concerning an informant's reliability may support

a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Coffee*, 434 F.3d at 893.

We have found that an affidavit contained sufficient corroborating information when "the details of the controlled purchase, and its connection to [the place to be searched], were spelled out in the affidavit." *Id.* at 894. An affidavit in which the affiant "described the controlled purchase that [the affiant] organized to corroborate the informant's information . . . [which] was controlled and witnessed by [the affiant], who searched the [informant] for money or contraband, provided the [informant] with pre-recorded funds, observed the [informant] enter and exit defendant's house, and then observed and tested the [contraband] the [informant] purchased from defendant," *id.*, included sufficient corroborating information to support probable cause. Similarly, this Court has found that an affidavit that "contained [the affiant's] personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for [contraband]," *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003), stated sufficient facts from which a magistrate judge could determine that probable cause existed.

In this case, the affidavit at issue stated, in relevant part,

This affidavit is made by TBI special Agent Gregg McNamara.

. . .

[Your affiant] met with [the informant] . . . on July 6, 2007, and that [the informant] provided information regarding illegal activity, to wit: Gary Adkins was selling methamphetamine in Hamelin County.

The [informant] state[d] that Gary Adkins routinely distributes methamphetamine from 5957 Old White Pine Road[,] Morristown, Tennessee. On July 6, 2007, [the

informant] placed a recorded phone call to Gary Adkins . . . . The purpose of this phone call was to arrange the purchase of ½ ounce of methamphetamine from Gary Adkins for the price of $1,000.00. Once [the informant] made contact with Gary Adkins, Adkins instructed [the informant] to call back in fifteen minutes.

The [ informant] called back in fifteen minutes and was informed by Gary Adkins that he would not be able to meet [the informant], but he would send someone else to meet [the informant] at the Hardee's on highway 25E Morristown, Tennessee. Shortly after [the informant] contacted Gary Adkins, surveillance . . . TBI [Agent] Jim Williams, observed a green Dodge pick[-]up truck . . . registered to Gary Adkins travel from 5957 Old White Pine Road to the parking lot of Hardee's on highway 25E Morristown, Tennessee.

Your affiant placed a digital recording device on the [informant's] person. Your affiant and [the informant] drove from the Hamblen County jail parking lot to the Hardee's on Highway 25E Morristown, Tennessee. During the travel to the Hardee's the [informant] placed a call to Gary Adkins stating [the informant] was going to be late arriving at the Hardee's and to confirm the description of the vehicle the [informant] was to meet with. [The informant] was informed the person the [informant] was to meet with was at the Hardee's parking lot and driving a green pick[-]up truck.

Upon arrival at the Hardee's on 25E Morristown, Tennessee, the [informant] got into the green pick[-]up truck with an unknown white male. After a short meeting with the unknown male, the [informant] returned to your affiant's vehicle and turned over to your affiant a red shop cloth containing a small plastic baggie that contained a crystal like substance, which field tested positive as methamphetamine. Your affiant and [the informant] returned to the Hamblen County Jail.

Once the green Dodge pick[-]up truck left the parking lot of the Hardee's it was observed by surveillance . . . returning to 5957 Old White Pine Road[,] Morristown, Tennessee.

(R. 16-1, Aff. in Supp. of Search Warrant at 13.)

Although the affidavit in this case did not discuss the informant's reliability, like the affidavits in *Coffee* and *Pinson*, it detailed the agent's first-hand observation of a controlled buy linked to both Defendant and Defendant's residence. The affidavit described the following facts sufficient to support probable cause: three recorded calls, monitored by Agent McNamara in which the informant

arranged a controlled buy with Defendant and confirmed that the informant would buy methamphetamine from Defendant's emissary who was driving a green pickup truck; Agent Williams observed a green pickup truck leave Defendant's residence, drive to the site of the controlled buy, and return to Defendant's residence after the controlled buy; Agent McNamara observed the informant transact the controlled buy in the green pickup truck; and the informant returned to Agent McNamara after the controlled buy with a plastic bag containing a substance that field tested positive for methamphetamine.

The police officers' first-hand observations of contraband circumstantially linked to Defendant's residence provide sufficient basis for a magistrate judge to conclude that there was "a fair probability that contraband or evidence of a crime will be found in [Defendant's residence]." *Jackson*, 470 F.3d at 306. The district judge thus did not err in denying Defendant's motion to suppress evidence seized pursuant to the July 6, 2007 search warrant.

Defendant additionally contends that the district court erred in refusing to suppress statements he made on July 6, 2007, after officers searched his house and arrested him. Defendant argues that his statements should be suppressed because "confessions made during or shortly after [an] illegal . . . search are tainted . . . and involuntary and should be suppressed." (Br. of Appellant at 17.) To be clear, Defendant admits that officers advised him of his *Miranda* rights prior to his confession. Defendant does not argue that his Fifth Amendment rights were violated; Defendant contends only that his Fourth Amendment rights were violated.

This Court has explained that under Fourth Amendment jurisprudence, "[t]he exclusionary rule generally bars the admissibility at trial of tangible evidence, as well as verbal statements,

acquired through unconstitutional means." *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003). This rule extends to "not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of a poisonous tree." *Id*.

As discussed above, in this case, the July 6, 2007 search of Defendant's residence was based on a warrant supported by probable cause. The search did not violate Defendant's Fourth Amendment rights. Therefore, because Defendant's July 6, 2007 confession was not tainted by a Fourth Amendment violation, Defendant's confession was admissible.

The district court did not err in denying Defendant's motion to suppress his July 6, 2007 confession.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.