NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0093n.06

Case No. 20-1162

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| UNITED STATES OF AMERICA, | ) | Feb 17, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| DEMARIO DESHAWN SIMPSON, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Demario Deshawn Simpson challenges several aspects of his trial and sentencing. Simpson alleges that the district court erred by not accepting his guilty plea, and by allowing an expert witness to testify as to drug trafficking at his trial. Simpson also argues that there was insufficient evidence for the jury to find him guilty of his firearm convictions. Finally, Simpson contends that his sentence was both procedurally and substantively unreasonable. For the reasons set forth below, we AFFIRM the judgment of the district court.

**I.**

On the night of May 14, 2019, police officers with the Kalamazoo Department of Public Safety ("KDPS") observed a group of individuals congregating close to Krom Street in Kalamazoo, Michigan. The KDPS officers, who were surveilling that area in response to

numerous reports from earlier in the week of shots being fired, also noticed that one of those individuals, Travis Farris, was in possession of a large handgun. Soon after the police began monitoring the activity near Krom Street, Farris, along with Cornell Gordon, Robert Love, and Simpson, entered a maroon Dodge Charger and drove away from the scene. Believing that the firearm possession was sufficient probable cause for an arrest, the officers followed the vehicle and watched the men drive a few blocks before parking on Bush Street. As the police were approaching the Dodge Charger, Sergeant Justin Wonders thought he saw Farris exit the vehicle— a suspicion that he confirmed when he drove past the vehicle a second time and discovered that Farris was no longer in the car. After realizing that Farris departed from the vehicle, Sergeant Wonders picked up Officer Dan Boglitsch and, while driving, witnessed at least three figures in a nearby vacant field who appeared to be using their cell phones to search for something.

Sergeant Wonders, along with Officers Boglitsch and Greg Day, then proceeded to pursue the individuals in the field on foot. Once the police officers entered the vacant lot, two men— Gordon and Love—took off running. Both Gordon[1] and Love were eventually apprehended blocks away from the empty field and arrested by Officers Chad VanderKlok and Alex Marshall, respectively. As it would later be determined, there were actually four people in the empty field, and the other two individuals—Farris and Simpson—did not flee from the officers. Upon reaching the vacant lot, Sergeant Wonders encountered Farris, drew his gun, and instructed Farris not to move. Farris complied with Sergeant Wonders' request and was placed in handcuffs and under arrest. Following Farris' arrest, the police searched him and found $650 as well as a small bag containing 9.01 grams of heroin on his person. A subsequent canine search that transpired within

---

[1] The police were able to obtain footage from a dashboard camera that shows Gordon removing a handgun from his person and tossing it towards a parked vehicle. The police would later locate this firearm following Gordon's arrest.

close proximity to where Farris was arrested assisted the officers with recovering a Diamondback 9mm semi-automatic pistol, which Officer Boglitsch testified he saw Farris with (through image-stabilizing binoculars) when he was near Krom Street on May 14.

Officer Day was responsible for arresting Simpson.  Simpson initially tried to escape, but tripped, giving Officer Day the opportunity to detain and arrest him.  Immediately after being apprehended, Simpson said to Officer Day, "I was just looking for my cell phone."  Following the detainment, Simpson freely consented to Officer Day searching him.  During the pat down, Officer Day felt Simpson clench his buttocks—a typical tactic used to conceal narcotics—and knew from previous experience that Simpson was likely hiding drugs.  Officer Day gave Simpson the opportunity to remove the drugs from his buttocks on his own; Simpson obliged, and Officer Day recovered a sandwich bag with 8.52 grams of heroin.  Simpson even told the officers, "You caught me red handed with this dope."  In addition to the drugs, Officer Day found a cell phone on Simpson's person.  Simpson voluntarily allowed Officer Day to search his cell phone (and even gave him his passcode); however, the officer did not find any incriminating evidence on this device.

After Simpson was arrested, the police found two other pieces of evidence near a tree, close to where Simpson fell while trying to flee.  The first piece of evidence was another cell phone. Even though Simpson had previously revealed to Officer Day that he was looking for his cell phone, Simpson denied that this second cell phone was his.  Simpson ultimately confessed to Officer Day that he owned the second cell phone and gave Officer Day permission (and again, his passcode) to search his other phone.  Officer Day testified that Simpson's second device had several messages indicating that he regularly engaged in drug-related activities.  The second piece of evidence obtained by the police was a firearm—a Taurus, 9mm semi-automatic pistol.  This

gun was located approximately five feet from Simpson's second cell phone. The police did not witness Simpson possess the gun, and neither his DNA nor his fingerprints were on the weapon, but body camera footage captured Simpson, moments before his arrest, trying to escape from the police, and with his right hand towards the ground by the tree.

Based on these events, the government filed an eight-count indictment, charging Farris, Gordon, and Simpson with committing various firearm and drug crimes. Simpson was charged with committing three crimes: possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C) (count two); felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (count four); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count seven). Although Farris and Gordon pleaded guilty, Simpson proceeded to trial.

Prior to his trial, Simpson attempted to plead guilty to count two of the indictment. The district court, however, denied Simpson's request. The district court reasoned that "the proofs regarding drug distribution, drug possession, and the quantities and the place found and all the rest is germane to the jury's . . . decision on whether or not if they find Mr. Simpson possessed a firearm [and] whether he was possessing it in furtherance of the drug-trafficking crime." The district court further noted, "we're not talking about a case where the charge [Simpson] wants to plead to is unrelated. In fact, I think it's, you know, intertwined completely with what's still got to be tried." As a result of the district court's decision, Simpson faced all three charges at trial.

Simpson filed a motion in limine before trial, seeking to prevent one of the government's expert witnesses, Agent Gregory Pond, from testifying. According to Simpson, Agent Pond was going to testify as a "drug-trafficking expert," discuss code words and lingo related to the drug trade, and explain that drug dealers protect their drugs with firearms. Simpson argued that Agent

Pond did not qualify as an expert and claimed that the jury would not benefit from hearing Agent Pond's testimony. The district court denied Simpson's motion, reasoning that Agent Pond's background made him a qualified expert witness, and that due to the circumstantial evidence pertaining to the firearm charges, Agent Pond's statements might be helpful to the jury.

At the conclusion of his trial, Simpson was found guilty of all three counts. Simpson subsequently filed a Rule 29 motion for acquittal and a Rule 33 motion for a new trial. The district court denied these motions. With those motions resolved, and the case in its sentencing phase, the probation office filed its presentence report. The district court later noticed that the presentence report had an error and corrected it by way of issuing an order to the parties. The probation office accurately grouped counts two and four (and excluded count seven), but mistakenly used the score for the controlled substance conviction as the controlling score for that group. The district court determined that though the base level for count four was 14 and the base level for count two was 12, the probation office should have used the score of 14 for that group, acknowledging that "the highest guideline score normally controls the group." All parties agreed with the district court's resolution.

During sentencing, Simpson's counsel asked the district court to consider a variance, stating "I think instead of making an argument that he is specifically entitled to a two-level reduction based upon his attempt to plead guilty, I think I would fold that into an argument regarding a potential variance in the case." To which the district court responded, "Right. I mean, if he . . . went to trial on just the two firearms charges we would be in exactly the same place on guidelines. Not a good argument for acceptance." Defense counsel agreed with the district court's assessment, then expressed that Simpson had issues with alcohol, and contended that the penalty for the § 924(c) conviction constituted severe punishment. The district court then considered the

§ 3553(a) factors, mentioning that a Guidelines sentence would cause Simpson to face more time in prison than he had experienced before, and indicated that, while incarcerated, Simpson would finally be able to focus on his alcohol addiction problem. The district court also stated:

> I frankly don't see the willingness that Mr. Simpson had to plead to the drug charges [as] a heavy factor bearing on variance, but it is at least a factor. It does tell me that Mr. Simpson was willing to take responsibility for what he felt he unequivocally had to take responsibility for. But since the heart of what the trial was all about, and the heart of what Mr. Simpson was not willing to take responsibility for was the firearm related activity, which elevated the overall seriousness and risks, if that alone were the basis for variance here I probably wouldn't do it, but in the overall mix, I think it adds some weight to the other factors that I described.

Considering all of the aforementioned factors, the district court sentenced Simpson to 24 months' imprisonment on counts two and four (to be served concurrently),[2] and 60 months' imprisonment on count seven. Simpson timely appealed, seeking for this Court to consider challenges related to his trial and sentence.

## II.

### A. Partial Guilty Plea

We review a district court's decision to reject a guilty plea for an abuse of discretion. *United States v. Doggart*, 906 F.3d 506, 509 (6th Cir. 2018). A criminal defendant does not have an "absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018). Courts that decide to reject a guilty plea must exercise "sound judicial discretion" and "articulate a sound reason for rejecting [the] plea." *Santobello*, 404 U.S. at 262; *United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990) (citation omitted).

---

[2] Based on the 14 offense level for counts two and four and Simpson's criminal history of VI, Simpson's Guidelines range for counts two and four was 37 to 46 months' imprisonment.

Simpson argues that the district court erred in denying his request to plead guilty to count two of the indictment. Specifically, Simpson contends that the district court's rejection of his request allowed the government to have the opportunity to present "highly prejudicial evidence" that would have been inadmissible had the court accepted Simpson's partial plea. When the district court denied Simpson's partial plea, it acknowledged that regardless of whether Simpson plead guilty to count two or not, the same evidence pertaining to the drug offense would have been admissible at trial since the government was required to prove that Simpson engaged in drug trafficking for a conviction of count seven. *See* 18 U.S.C. § 924(c)(1)(A)(i). Moreover, the district court explained that it was likely to Simpson's benefit that he be tried on all three charges because that would eliminate the possibility of Simpson making unfavorable admissions under oath during his plea colloquy, which would presumptively be considered admissible evidence. The district court additionally noted that Simpson could have stipulated during his opening statement that he was not contesting his guilt as it pertained to count two. In reaching its determination, the district court did not act in an arbitrary manner, *see Moore*, 916 F.2d at 1136, because it offered Simpson with not only practical, but sound reasons supporting its decision. *See Cota-Luna,* 891 F.3d at 648 (ruling that the district court abused its discretion by arbitrarily rejecting defendants' plea agreement based on its belief that the sentence agreed upon by the defendants and the government was too lenient). Consequently, the district court did not abuse its discretion by denying Simpson's request to accept his partial plea.

**B. Admission of Expert Testimony**

"This Court reviews for an abuse of discretion whether the district court properly admitted or excluded expert testimony under Federal Rule of Evidence 702." *United States v. Amawi*, 695 F.3d 457, 478 (6th Cir. 2012). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 affords the district court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). We have held that the Rule 702 analysis should be performed in three steps. "First, the witness must be qualified by knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702) (internal quotation marks omitted). "Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702) (internal quotation marks omitted). "Third, the testimony must be reliable." *Id.* (quoting Fed. R. Evid. 702).

For several reasons, Simpson asserts that the district court mistakenly allowed Agent Pond to testify as an expert witness. First, Simpson contends that Agent Pond was not qualified to be an expert. The district court found Agent Pond was qualified considering that he worked on criminal investigations as an agent with the Drug Enforcement Administration ("DEA") for 14 years. Before trial, the government pointed out that Agent Pond was involved in numerous investigations while working for the DEA (in Michigan, Missouri, and Afghanistan),[3] and attended multiple drug investigation training courses, which gave him the ability to candidly testify about

---

[3] Contrary to Simpson's claim that Agent Pond's credentials suggest that he primarily worked overseas, in addition to working in Afghanistan, Agent Pond also gained relevant experience in the United States.

how drug dealers use their firearms to protect their drugs. Furthermore, Agent Pond testified that he had been involved in hundreds of drug investigations, had five years of experience with local law enforcement before he became a DEA agent, and was deemed qualified to testify in another federal court. Based on his experience, the district court did not abuse its discretion in finding that Agent Pond was qualified as an expert. *See United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) (finding a DEA agent with six years of relevant experience investigating drug crimes to be qualified as an expert witness).

Second, Simpson argues that Agent Pond's testimony was irrelevant because it would have been obvious to the jury that drug dealers carry firearms. Simpson also contends that it was unnecessary for Agent Pond to define the term "dope sick," which refers to how drug users feel after using heroin, since there are many resources available that explain what this term means. The district court ruled that because the firearm at issue was not found on Simpson's person, the government was going to have to present circumstantial evidence to prove that the gun found on the ground near Simpson in the vacant lot belonged to him. The district court decided that Agent Pond's testimony would assist the jury. Throughout his testimony, Agent Pond opined, *inter alia*, that drug dealers normally possess firearms for protection and intimidation. We have permitted such testimony previously. *See United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (holding that the district court did not plainly err by allowing an agent to testify that drug dealers carry firearms for intimidation and protection); *United States v. Ham*, 628 F.3d 801, 804–05 (6th Cir. 2011) (same). Our precedent therefore compels us to hold that the district court did not abuse its discretion in finding that Agent Pond's testimony was relevant. With regard to Agent Pond's comments about the term "dope sick," though his statements might not have been particularly germane to Simpson's charges, prior to Agent Pond's testimony, the court instructed the jury to

discretionarily "decide whether to accept some, all, or none of what Mr. Pond [said]" since Agent Pond was only testifying as a fact witness. Nevertheless, Simpson has not sufficiently shown that such testimony affected his substantial rights.[4] *See* Fed. R. Crim. P. 52(a); *see, e.g.*, *United States v. Robinson*, 872 F.3d 760, 780 (6th Cir. 2017).

Third, Simpson contends that the testimony presented by Agent Pond was unreliable because Agent Pond allegedly did not present to the jury a proven methodology demonstrating that his testimony that drug dealers carry weapons was well founded. In support of his argument, Simpson cites to *United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013). In *Freeman*, we held that the testimony of an agent, who was testifying as a lay witness based on his personal knowledge under Federal Rule of Evidence 701, was inadmissible because the agent did not explain the basis of his interpretations of phone conversations, and therefore the government failed to properly lay a foundation under Rule 701. *Id.* at 596. Only after the Court made this finding did we assess whether the agent *might have* qualified as an expert witness. *Id.* at 599. The Court then stated that due to the fact that it was unclear what "methodology" or "guiding principles" he relied on to form his opinions, the district court likely would not have allowed the agent to testify as an expert. *Id.* at 600 (quoting *United States v. Johnson*, 617 F.3d 286, 294 (4th Cir. 2010)). In the instant case, Agent Pond based his testimony on his first-hand experiences deriving from 14 years as a DEA agent, which, as we mentioned above, our Court has deemed constitutes reliable evidence. *See, e.g.*, *Swafford*, 385 F.3d at 1030. Accordingly, the district court did not abuse its discretion as it pertains to the reliability of Agent Pond's testimony.

---

[4] Simpson claims that the portions of Agent Pond's testimony regarding the connection between drug dealers and firearms were prejudicial because Agent Pond "essentially told the jury that Mr. Simpson carried the gun." Simpson, however, mischaracterizes Agent Pond's testimony. Agent Pond only testified that drug traffickers in general—as opposed to Simpson specifically—are known to possess guns for protection and intimidation purposes.

### C. Sufficiency of the Evidence

"We review de novo a challenge to the sufficiency of the evidence supporting a criminal conviction." *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009). Defendants "claiming insufficiency of the evidence bear a heavy burden." *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998). We evaluate such claims "in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Id.* (citation omitted). "In making this determination, however, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). Additionally, "[w]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for us to exclude every reasonable hypothesis but guilt." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

Simpson contends that there was an insufficient amount of evidence presented for a jury to convict him of his firearm-related charges. Simpson alleges that he neither possessed the firearm (Taurus, 9mm semi-automatic pistol )—an element of counts four and seven, *see* 18 U.S.C. §§ 922(g)(1), 924(c)—nor possessed the firearm in furtherance of drug trafficking, *see* § 924(c). In response, the government argues that the circumstantial evidence presented in the case was sufficient for the jury to find Simpson guilty of both charges.

#### 1. Count Four

To prove that Simpson violated 18 U.S.C. § 922(g)(1), the government was required to show that: (1) Simpson knew he had a prior felony conviction; (2) Simpson knowingly possessed the firearm; and (3) the possession was in or affected interstate commerce. *See United States v.*

*Davis*, 577 F.3d 660, 671 (6th Cir. 2009). Simpson only challenges whether he knowingly possessed the firearm at issue, so we evaluate the facts accordingly. We have said previously that under § 922(g)(1), a defendant "may be convicted based on either actual or constructive possession of a firearm." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007). "Both actual possession and constructive possession may be proved by direct or circumstantial evidence." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977).

Actual possession exists when a defendant "knowingly has direct physical control over a thing at a given time." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (quoting *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005)). Additionally, there must be some evidence that the defendant had "immediate possession or control" of the firearm at issue. *Grubbs*, 506 F.3d at 439 (quotation omitted). Here, there was no actual possession because Simpson was not clearly holding the gun when the police apprehended him, and he was not seen with the firearm prior to his arrest. *See United States v. Workman*, 755 F. App'x 533, 537 (6th Cir. 2018) (citing *Bailey*, 553 F.3d at 944).

The constructive possession of a firearm requires that a person "*knowingly* has the power and the *intention* at a given time to exercise dominion and control over an object, either directly or through others." *Craven*, 478 F.2d at 1333. "[P]resence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms." *Bailey*, 553 F.3d at 945 (quoting *United States v. Birmley,* 529 F.2d 103, 107–08 (6th Cir. 1976)). "[O]ther incriminating evidence, coupled with presence is needed to tip the scale in favor of sufficiency." *Grubbs*, 506 F.3d at 439 (quoting *United States v. Arnold,* 486 F.3d 177, 183 (6th Cir. 2007) (en banc)) (internal quotation marks omitted). As we have noted in the past, it is critical

that any theories of constructive possession include facts demonstrating that a defendant had the "specific intent" to possess the firearm. *Bailey*, 553 F.3d at 945 (citing *United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006)).

Here, this is a close case because there is evidence supporting a finding both that Simpson did and did not constructively possess the firearm. However, it cannot be said that *no rational trier of fact* could have found the elements of § 922(g)(1) *beyond a reasonable doubt. See Maliszewski*, 161 F.3d at 1005. On the one hand, as the district court admitted, "[t]here's no confession. There was no eyewitness. There were no fingerprints or other evidence linking Mr. Simpson biologically to the firearm." Another important detail is that, in addition to Simpson, there were three other men in the vacant lot where the gun in question was discovered who each were searching for an unidentified object; therefore, the gun could have logically belonged to any of those individuals.

On the other hand, as the government asserts, the gun was found only a couple of feet from where Simpson was arrested. But, as we have previously explained, merely being near a firearm does not definitively prove constructive possession. *See Bailey*, 553 F.3d at 947; *but see Grubbs*, 506 F.3d at 440 ("When the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less."). While true, there is other supporting evidence indicating that the firearm discovered by the police was constructively possessed by Simpson. Simpson's second cell phone was positioned approximately five feet from the weapon. Simpson asserts that though his second cell phone was next to the gun, there were no pictures of him on his phone with the firearm (or on any of his social media accounts), but a rational trier of fact could have overlooked the absence of photographic evidence, considering that Simpson and

- 13 -

his cell phone were close to the weapon. Further, while the video footage of Simpson fleeing and potentially reaching for the weapon is inconclusive at best, it could have also led the jury to believe that Simpson constructively possessed the weapon.[5] Simpson is right that there were other men seen in the vacant lot not long before he was apprehended; however, the fact that he was the only one of those men close to the gun when the police arrived—not to mention that two of those men were arrested with firearms on their person[6]—casts doubt on whether anyone besides Simpson constructively possessed the gun.

Accordingly, when viewing the evidence in the light most favorable to the government, a rational trier of fact could have determined that Simpson constructively possessed the firearm. The gun was located next to Simpson's second cell phone, which Simpson admittedly used for drug-dealing purposes. Simpson also had drugs on his person when he was arrested. When those two facts are considered along with Agent Pond's testimony that drug dealers possess weapons for their protection and intimidation, the jury could have rationally concluded that Simpson *knowingly* had the power and *intention* to exercise dominion and control over the firearm beyond a reasonable doubt.[7] *Craven,* 478 F.2d at 1333. Again, the evidence does not directly confirm that Simpson constructively possessed the firearm, but, given the very high bar that Simpson has to

---

[5] Simpson cites to *Bailey* for the proposition that evidence of an attempt to evade arrest hardly proves that he constructively possessed the firearm. 553 F.3d at 946. This assertion ignores the other evidence mentioned above that *might* have caused the jury to convict Simpson of § 922(g)(1).

[6] We note that we are not in any way expressing that one of the other three men in the field could not have possessed multiple guns, but we only point this fact out to demonstrate that it *could* have influenced the jury's decision-making process.

[7] Simpson asserts that *Bailey* constitutes precedent that forces the Court to reach a different conclusion, but we are not convinced. In *Bailey*, the defendant was accused of possessing a firearm that was found underneath the seat of a car he borrowed. 553 F.3d at 946. But there, the defendant testified at trial that he was not aware the gun was inside the car, and that he did not have a gun on his person when he entered the car. There was also no evidence showing that he constructively possessed the firearm besides the fact that he happened to be in a vehicle where a gun was located. *Id. Bailey* is factually distinguishable from our case because here, the gun was found five feet away from Simpson and his second cell phone, and there is no evidence establishing that Simpson did not have a weapon on his person when he entered the open field. Although *Bailey* might be similar to the present case in some respects, it does not require the Court to conclude that Simpson could not have constructively possessed the firearm.

overcome for a sufficiency of the evidence challenge, we cannot find that there was insufficient evidence for a § 922(g)(1) conviction.

## 2. Count Seven

As it pertains to the conduct Simpson was accused of committing, the government was required to prove for a conviction of § 924(c) that Simpson "possesse[d] a firearm," "in furtherance of" a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Because we have established that Simpson constructively possessed the firearm, the only issue left is whether Simpson possessed the firearm "in furtherance of" a "drug trafficking crime." *Id.* In these instances, we typically turn to the *Mackey* factors to examine whether a defendant possessed a firearm in furtherance of drug trafficking. *See United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). These (non-exhaustive) factors include an assessment of: (1) whether the firearm was "strategically located so that it is quickly and easily available for use"; (2) "whether the gun was loaded"; (3) "the legality of its possession"; (4) "the type of drug activity conducted"; and (5) "the time and circumstances under which the firearm was found." *Id.* We have also made it clear that there must be "a specific nexus between the gun and the crime charged." *Id.* With those factors in mind, we turn to the facts of the present case.

When all of the *Mackey* factors are taken under consideration, there was enough evidence for a rational jury to have convicted Simpson of § 924(c). The gun was located within arm's reach of Simpson, giving him easy access to use the weapon. The gun was loaded. The gun was not legally possessed by Simpson. There was testimony at trial explaining that the heroin on Simpson's person was worth thousands of dollars, and he admitted that the drugs were his and that he sold drugs. The gun was recovered next to him and the heroin that he possessed, as well as his cell phone, which he used for drug-dealing transactions. Most importantly, all of these details are

indicative of a specific nexus between Simpson constructively possessing the firearm and Simpson constructively possessing the firearm to "aid[] or further[] a . . . drug-trafficking crime."[8] *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020). Therefore, the evidence was sufficient for a § 924(c) conviction.

### D. Procedural and Substantive Reasonableness

A criminal sentence must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). The Court must assess the merits of a procedural reasonableness challenge before examining a substantive reasonableness claim. *Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing a district court's sentencing determination, the Court examines its reasonableness under a "deferential abuse-of-discretion standard." *United States v. Bolds,* 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall*, 552 U.S. at 41).

Regarding procedural reasonableness, a district court abuses its discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

---

[8] Simpson cites to *United States v. Ray*, 803 F.3d 244 (6th Cir. 2015) in support of an alternative holding. In *Ray*, we said that the defendant *could not have* possessed *a shotgun* in furtherance of drug trafficking because it was unloaded and was not strategically located within reach to protect drugs that were found in the same room as the gun. *Id.* at 263–64. We also stated in that case that the defendant *could not have* possessed *a rifle* in furtherance of drug trafficking since there were no drugs in the same room where that firearm was found. *Id.* at 264. However, we additionally decided that the defendant *could have* possessed *a handgun* in furtherance of drug trafficking due to the fact that it was recovered in a jacket pocket in the closet that contained another jacket with illicit substances. *Id.* Considering the type of weapon found near Simpson (a handgun), and the proximity between the gun and the heroin found on Simpson's person, *Ray* only confirms that it was rational for a jury to find Simpson was guilty of violating § 924(c).

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). The analysis is not whether "the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness." *Id*. Instead, substantive reasonableness asks whether "the court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual." *Id.*; *see also United States v. Bailey*, 931 F.3d 558, 562 (6th Cir. 2019). Further, "[t]he fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Simpson argues that his sentence was both procedurally and substantively unreasonable for the same reason: the district court failed to consider his willingness to plead guilty to the drug charge. Regarding procedural reasonableness, Simpson is essentially claiming that the district court erred by "failing to consider the § 3553(a) factors." *See id*. When sentencing Simpson, the district court considered the § 3553(a) factors before deciding that it was appropriate to vary downward from 37 to 46 months' imprisonment to 24 months' imprisonment on counts two and four. As part of its analysis, the district court acknowledged that Simpson did attempt to plead guilty to the drug charge, but ultimately found that his concession did not have much of an effect on Simpson's sentence because he had no choice but to take responsibility for the drug crime due to the evidence that would be presented at trial. Therefore, Simpson's arguments pertaining to procedural reasonableness fail because even though the district court did consider his willingness to plead guilty to count two, the court did not believe his admission should have significantly affected Simpson's ultimate sentence. As for substantive reasonableness, the Court cannot find that the district court did not adequately balance the § 3553(a) factors in a manner that resulted in

Simpson receiving too long of a sentence. The district court fairly balanced all relevant considerations, and after doing so, found that Simpson was entitled to a downward variance. The district court did not abuse its discretion in weighing the § 3553(a) factors. Therefore, Simpson's substantive reasonableness arguments fail as well.

## III.

For the foregoing reasons, we AFFIRM the district court's judgment.